Ernest F. SIMPSON, Appellant,

v.

MBANK DALLAS, N.A. f/k/a Mercantile National Bank at Dallas, Appellee.

No. 05–86–00110–CV.

Court of Appeals of Texas, Dallas.

Jan. 9, 1987.

Rehearing Denied Feb. 11, 1987.

John Wright, Dallas, for appellant.

James J. Lee, Michael J. Quilling, Dallas, for appellee.

Before AKIN, STEPHENS and STEWART, JJ.

STEPHENS, Justice.

Ernest F. Simpson appeals from a summary judgment granted in favor of Mercantile National Bank at Dallas (MBank). In eight points of error Simpson asserts that the trial court erred in granting summary judgment: (1) because there was a fact issue regarding appellant's counterclaim for impairment of collateral; (2) because appellant presented evidence to raise an issue of fact regarding impairment of collateral; (3) because there was a fact issue as to whether the failure of MBank to obtain a landlord's waiver discharged the appellant from his guaranty; (4) because the appellant presented evidence to raise an issue of fact as to whether appellant received consideration from appellee at the time of execution of the guaranty; (5) because appellant presented evidence to raise an issue of fact concerning the affirmative defense of estoppel; (6) because there was a fact issue as to whether MBank had committed a deceptive trade practice under the Texas Deceptive Trade Practices Act; (7) because there was a fact issue as to whether MBank committed fraud as part of a scheme to force appellant to sign the guaranty at closing; and (8) because there was a fact issue as to whether appellant was under duress at the time of the execution of the guaranty. In his ninth point of error, Simpson contends that the trial court erred in awarding attorney's fees because appellee failed to present summary-judgment evidence that the amount of attorney's fees it claimed was reasonable. Finally, in his tenth point of error, Simpson contends that the trial court erred in granting summary judgment because there was a fact issue regarding failure to notify the guarantor of the repossession and sale of secured property. We disagree with Simpson's points of error one through eight and point of error ten. We agree with Simpson's ninth point of error. Therefore, we reverse the trial court's judgment awarding attorney's fees to MBank and sever and remand MBank's claim for attorney's fees. In all other respects the trial court's judgment in favor of MBank is affirmed.

The present suit arose from the following facts. In May 1978, MBank extended a six-month commitment for a $300,000 line of credit to LumberKing, Inc. The loan proceeds were to be used by LumberKing as working capital and were evidenced by notes corresponding to the amount of each draw. The notes were due ninety days from the date of draw, or on demand, with interest thereon at MBank's prime rate plus two and one-half percent per annum being due and payable monthly.

In December 1978, MBank renewed and extended the above-referenced commitment and increased the amount of the line of credit to $325,000. Again, borrowings under the increased line of credit were to be used as working capital and the terms of notes generated by the draws remained the same as under the original line of credit. The line of credit was fully funded by June 1979. MBank renewed and extended the $325,000 line of credit for another one-year period, under the same terms and conditions.

In July 1979, MBank loaned LumberKing $45,000 for building improvements. The $45,000 extension of credit was evidenced by a one-year installment note with monthly principal payments of $1,250 plus accrued interest due and payable beginning November 15, 1979. In connection with the above loans by MBank to LumberKing, the shareholders of LumberKing, Ron Beattie and Keith Hendrickson, executed personal guaranties of the entire indebtedness.

In early 1980 LumberKing requested an additional loan of $100,000 from MBank, which was refused.

In February 1980, Ernest Simpson, appellant, purchased Ron Beattie's interest in LumberKing. In conjunction with his purchase, Simpson executed a personal guaranty for the previously funded debts of $325,000 and $45,000. Under the terms of the guaranty, Simpson and Hendrickson were jointly and severally liable for the indebtedness. MBank then released Beattie from his guaranty.

Due to LumberKing's difficulty in servicing its debts, Hendrickson and Simpson arranged for United Foam Industries, Inc.

(UFI) and W.W. Cordes to purchase their shares in LumberKing. In connection with this sale, MBank renewed and restructured the $325,000 line of credit and the $45,000 note, consolidating the two debts into one note. The sale took place on October 10, 1980. On October 10, 1980, UFI, Cordes, and Simpson each executed a written guaranty of any and all amounts of indebtedness then existing or thereafter to become due from LumberKing to MBank.

When, following the sale of LumberKing to UFI and Cordes, payment on the consolidated note became delinquent, MBank declared LumberKing in default and accelerated the maturity date of the entire indebtedness evidenced by the consolidated note. Neither LumberKing nor the guarantors on the note paid the note, therefore, MBank instituted this lawsuit.

MBank sued LumberKing, UFI, Cordes, and Simpson seeking judgment against defendants under the consolidated note, together with injunctive relief to prevent LumberKing from liquidating its inventory. MBank claimed that the inventory constituted collateral securing the indebtedness of LumberKing to MBank. On April 5, 1982, the trial court entered a temporary restraining order restraining LumberKing from selling its inventory other than in the ordinary course of business. On April 16, 1982, the trial court issued its temporary injunction to the same effect.

LumberKing, UFI, Cordes and Simpson all denied liability to MBank and asserted defenses and counterclaims. After discovery, MBank moved for summary judgment against each defendant as to both MBank's claims for relief and as to defendants' counterclaims. The trial court, on February 6, 1984, granted interlocutory summary judgment in favor of MBank against all defendants except Simpson. After additional discovery involving only Simpson and MBank, MBank on August 22, 1985, again moved for summary judgment. The trial court held a summary judgment hearing on September 25, 1985, and on January 15, 1986, granted summary judgment in favor of MBank on all of MBank's affirmative claims for relief and denied all

of Simpson's counterclaims against MBank. Simpson appeals from the January 15, 1986 summary judgment against him.

In his first point of error, Simpson argues that the trial court erred in granting summary judgment because a fact issue existed regarding Simpson's counterclaim for impairment of collateral. Simpson's first point of error is multifarious in that Simpson raises three subpoints under his point of error. In subpoints A, B, and C, respectively, Simpson contends: that MBank impaired the collateral by failing to obtain a waiver of the landlord's lien; that MBank impaired the collateral by failing to protect the collateral after the temporary injunction issued; and that MBank mistakenly interpreted one paragraph of the guaranty as a consent by Simpson to the impairment of the collateral. We will address each subpoint.

First, Simpson argues that the collateral was "impaired" under section 3.606(a) of the Texas Business and Commerce Code at the time he signed the October 10, 1980 guaranty because MBank had not obtained a waiver of the landlord's lien. Section 3.606(a) is not applicable in the present case. That section provides:

(a) The holder discharges any *party* to the *instrument* to the extent that without such party's consent the holder

....

(2) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

(emphasis added). TEX.BUS. & COM. CODE ANN. § 3.606 (Tex.UCC) (Vernon 1968). Simpson is not a *party* to LumberKing's consolidated note, and the guaranty under which appellant is sued is not an *instrument*, as defined in section 3.102(a)(5) of the Texas Business and Commerce Code. *See* TEX.BUS. & COM.CODE ANN. § 3.102(a)(5), § 3.104 (Tex.UCC) (Vernon 1968); *Cortez v. National Bank of Commerce of Brownsville*, 578 S.W.2d 476, 478–79 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Eikel v. Bristow*

*Corporation,* 529 S.W.2d 795, 799–800 (Tex.App.—Houston [1st Dist.] 1975, no writ).

■ Furthermore, we have found no cases, and appellant fails to cite any cases, holding that MBank had a duty to obtain a waiver of the landlord's lien prior to securing Simpson's guaranty. Simpson's first contention, subpoint A, under point of error number one is overruled.

■ Next, Simpson argues, in subpoint B, that MBank impaired the collateral by failing to protect it after the temporary injunction issued and, in subpoint C, that the guaranty did not contain a paragraph whereby Simpson consented to any impairment of collateral. Under subpoint A, we held that section 3.606 is not applicable to the present case and that, therefore, Simpson is precluded from asserting that under section 3.606 MBank owed him a duty to refrain from impairing the collateral. Simpson has failed to cite authority, other than section 3.606, in support of his proposition that MBank owed him a duty to refrain from impairing the collateral. We find that even if MBank did owe Simpson the duty in question, Simpson nonetheless consented to any impairment of collateral. The guaranty signed by Simpson provides:

> Bank may from time to time, at its discretion and with or without valuable consideration, surrender, release, exchange or alter any collateral or security for any Guaranteed Indebtedness without affecting the liability of Guarantors under this guaranty ...

Even when appearing on *"instruments,"* as defined in section 3.102(a)(5) of the Texas Business and Commerce Code, clauses similar to the paragraph quoted above have been interpreted as consent by the guarantor to remain liable in spite of any impairment of collateral. *Lawyers Title Insurance Corp. v. Northeast Texas Development Co.,* 635 S.W.2d 897, 899 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). In the present case, we are dealing not with an instrument, as defined in section 3.102(a)(5) of the Texas Business and Commerce Code, but with a *contract.* Under general contract law, the above quoted terms are valid

and enforceable. *See Kane v. Citizens Fidelity Bank and Trust Co.,* 668 S.W.2d 564, 565 (Ky.Ct.App.1984). The unconditional, continuing guaranty executed by Simpson is, by its terms, binding upon him regardless of any impairment of collateral. Therefore, whether MBank did in fact impair the collateral by failing to obtain a waiver of the landlord's lien or failing to protect it after the temporary injunction issued, is irrelevant; Simpson is nonetheless liable on his contractual guaranty. Simpson's first point of error and subpoints A through C asserted thereunder are overruled.

In his second point of error, Simpson contends that "the trial court erred by granting appellee's motion for summary judgment because the evidence is sufficient to raise an issue of fact regarding appellant's defense of impairment of collateral." Simpson again relies on section 3.606 in attempting to avoid liability under his guaranty. As we have previously stated, section 3.606 is not applicable in this case because Simpson's guaranty is not an "instrument," as defined in section 3.102(a)(5) of the Texas Business and Commerce Code, and Simpson was not a "party" to the underlying note. *See Cortez,* 578 S.W.2d at 478. Simpson is not entitled to rely on the defense of impairment of collateral set forth in section 3.606 of the Texas Business and Commerce Code. Simpson's second point of error is overruled.

In his third point of error, Simpson argues that the trial court erred in granting summary judgment because a fact question existed as to whether MBank's failure to obtain a waiver of the landlord's lien discharged Simpson from his guaranty. Simpson presents no argument under this point of error, merely stating, "Appellant adopts the arguments set out in Points I and II above." We discussed and overruled this contention under Simpson's first point of error. Simpson's third point of error is therefore overruled.

In his fourth point of error, Simpson asserts that the trial court erred in granting judgment because he presented evidence raising a fact issue as to whether the

guaranty was supported by consideration. In his "arguments and authorities" under this point of error, Simpson contends that the October 10, 1980 guaranty was not supported by consideration.

■ The law is settled that the existence of a written contract presumes consideration for its execution. *See Wright v. Robert & St. John Motor Co.*, 122 Tex. 278, 282, 58 S.W.2d 67, 69 (1933); *Hargis v. Radio Corporation of America, Electronic Components*, 539 S.W.2d 230, 232 (Tex. Civ.App.—Austin 1976, no writ). Therefore, where a contract of guaranty is in writing and signed by the guarantor, its existence imports a consideration. *Gubitosi v. Buddy Schoellkopf Products, Inc.*, 545 S.W.2d 528, 537 (Tex.Civ.App.App.—Tyler 1976, no writ); *see Cortez*, 578 S.W.2d at 479.

■ The guaranty in question is written, signed by the guarantor, Simpson, and recites that it was executed "for value received." Therefore, the guaranty in question presumptively imported consideration and the burden was upon Simpson to plead and prove the absence of consideration. *See Richardson v. Office Bldgs. of Houston*, 704 S.W.2d 373, 375 (Tex.App.—Houston [1st Dist.] 1985, no writ); *Clark v. Dedina*, 658 S.W.2d 293, 297 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd); *Cortez*, 578 S.W.2d at 479; *Maykus v. Texas Bank & Trust Company of Dallas*, 550 S.W.2d 396, 398 (Tex.Civ.App.—Dallas 1977, no writ); *Williams v. Hill*, 396 S.W.2d 911, 913 (Tex.Civ.App.—Dallas 1965, no writ).

■ Simpson failed to meet his burden of proving the absence of consideration because he did not offer summary judgment evidence to rebut the presumption that a written contract imports its own consideration. *See Williams*, 396 S.W.2d at 913. Simpson's affidavit, included in his response to MBank's motion for summary judgment, states that on October 10, 1980, he entered into an agreement with United Foam Industries, Inc. (UFI), whereby UFI purchased all of his LumberKing stock and acquired all of his interest in LumberKing. Simpson's affidavit further states that at

the sale closing transaction on October 10, 1980, MBank *"forced"* him to execute the guaranty agreement in question. MBank presented summary judgment evidence that it agreed to the sale of LumberKing to UFI and the restructuring of the existing debt *on the condition* that Simpson, among others, execute and deliver to MBank a written, unlimited, personal guaranty of the restructured debt. The summary judgment evidence before the trial court shows that MBank conditioned its agreement to the sale of LumberKing upon the securing of the requested guaranties. We hold that MBank's acquiescence to the sale of LumberKing, and to the restructuring of the existing debt, conferred a benefit upon Simpson and constituted consideration supporting the guaranty. Simpson's fourth point of error is overruled.

In his fifth point of error, Simpson contends that the trial court erred in granting summary judgment because he presented evidence raising a fact issue on his affirmative defense of estoppel. Simpson argues that MBank misrepresented the financial status of UFI and W.W. Cordes and also represented that the October 10, 1980 guaranty was a "mere formality" which would result in no liability to him. Simpson contends that MBank knew of the falsity of these representations and induced him to rely on them to his detriment.

■ Simpson had the burden of offering summary judgment evidence on each element of his affirmative defense of estoppel. *See Richardson v. Office Bldgs. of Houston*, 704 S.W.2d at 376; *Decor Dimensionals, Inc. v. Smith*, 494 S.W.2d 266, 268 (Tex.Civ.App.—Dallas 1973, no writ). One of the requirements of estoppel is that the party claiming the estoppel was without knowledge, or the means of acquiring knowledge, of the facts which the party to be estopped is alleged to have represented by his acts, conduct, or silence. *Barfield v. Howard M. Smith Company of Amarillo*, 426 S.W.2d 834, 838 (Tex.1968). Furthermore, a party claiming an estoppel must have used due diligence to ascertain the truth of the matters upon which he relies in acting to his detriment. *Barfield*, 426

S.W.2d at 838. And, estoppel requires a *reasonable* or *justified* reliance on the conduct or statements of the person sought to be estopped by the person seeking the benefit of the doctrine. *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 317 (Tex. App.—Tyler 1985, no writ). We have reviewed the evidence and find that Simpson did not satisfy his burden of offering summary judgment evidence on each element of estoppel. Specifically, we find *no evidence* in the record that Simpson was without knowledge, or had no means of acquiring knowledge, of the financial status of UFI and W.W. Cordes or the effect of his October 10, 1980 guaranty. A review of the record reveals only unrebutted evidence to the contrary. In his deposition Simpson admits he did not attempt to ascertain the financial status of UFI or W.W. Cordes, but instead relied on the advice of Henderson, his business partner. Simpson could have verified the information he received from Henderson, but did not. If anyone made a false representation to Simpson as to UFI's and Cordes' financial status, it was Henderson, not MBank. Furthermore, as to the October 10 guaranty, Simpson had the means of acquiring knowledge of the effect of this guaranty. The record reflects that Simpson had signed numerous prior guaranties in favor of MBank on the exact same guaranty form contract used by MBank on October 10, and that Simpson fully understood the implication of signing the earlier guaranties. We find that even if Simpson relied on an assertion by MBank that the October 10 guaranty was a "mere formality" that would not result in liability to Simpson, such reliance was not reasonable or justified.

Additionally, Simpson's allegations that MBank represented the October 10, 1980 guaranty was a "mere formality" upon which he would not be held liable are conclusory and do not comply with the requirements of summary judgment proof set forth in Texas Rule of Civil Procedure 166–A(e). *See* Tex.R.Civ.P. 166–A(e) (Vernon Supp.1986); *Sharpe v. Lomas & Nettleton Financial Corp.*, 601 S.W.2d 55, 56 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.

e.). Simpson's assertions that MBank misrepresented the effect of the October 10 guaranty do not comply with Rule 166–A(e) in another respect. Rule 166–A(e) provides:

**(e) Form of Affidavits; Further Testimony.**

Supporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence, . . .*

(emphasis added). Tex.R.Civ.P. 166–A(e) (Vernon Supp.1986).

In the present case, the October 10 guaranty is a written contract between Simpson and MBank. Generally, parol agreements or representations are inadmissible to vary the terms of an express, unambiguous, written contract. *See Texas Export Development Corp. v. Schleder*, 519 S.W.2d 134, 137 (Tex.Civ. App.—Dallas 1974, no writ). The law is well settled that in order for Simpson to prove fraud in the inducement sufficiently to allow any exception to the parol evidence rule to come into play, he must show some type of trickery, artifice or device employed by MBank in addition to showing that MBank represented to him that he would not be liable on the guaranty. *See Town North National Bank v. Broaddus*, 569 S.W.2d 489 (Tex.1978); *Clark v. Dedina*, 658 S.W.2d at 296. Although Simpson has conclusorily alleged that MBank represented to him that he would not be liable on the guaranty, Simpson has failed to show that MBank engaged in trickery, artifice or device in obtaining the guaranty. Therefore, the parol evidence rule applies and Simpson's assertion that MBank said the October 10 guaranty was a "mere technicality" is inadmissible. Rule 166–A(e) requires that summary judgment proof consist of *admissible* evidence. Consequently, Simpson has in fact presented no summary judgment evidence on this issue. Simpson's fifth point of error is overruled.

In his sixth point of error, Simpson contends that the trial court erred in granting summary judgment because a fact issue existed as to whether or not MBank

committed a deceptive trade practice under the Texas Deceptive Trade Practices Act. Simpson's brief states:

> Here, Appellant had no knowledge that he would be called upon to perform under the guaranty that was represented as being a "mere technicality" until after suit was filed by Appellee. Moreover, Appellant had no knowledge of the omission by the bank in disclosing the failure to obtain the landlord lien waiver until after such omission was discovered. Appellant's claim under the Deceptive Trade Practices Act based on these omissions and misrepresentations ...

Apparently Simpson is asserting that the alleged statement that the October 10, 1980 guaranty was a "mere technicality," and MBank's failure to obtain a waiver of the landlord's lien, constituted deceptive trade practices. We have previously disposed of the landlord's lien issue. We held that, in this case, MBank had no duty to obtain a waiver of the landlord's lien. Hence, failure to obtain the waiver cannot constitute a deceptive practice. We have previously held, under Simpson's fifth point of error, that the evidence offered by Simpson regarding MBank's misrepresentation as to the effect of the October 10 guaranty was improper summary judgment evidence in that it did not comply with Texas Rule of Civil Procedure 166–A(e). Since Simpson's summary judgment proof on this issue was improper, the trial court did not err in granting summary judgment for MBank on Simpson's Deceptive Trade Practices Act claim. Simpson's sixth point of error is overruled.

In his seventh point of error, Simpson contends that the trial court erred in granting summary judgment because a fact issue exists "as to whether MBank committed fraud as part of a scheme to force Appellant to sign the guaranty at closing." In support of this argument, Simpson cites only one case, *Town North National Bank v. Broaddus*, 569 S.W.2d 489 (Tex.1978). We previously held under Simpson's fifth point of error that Simpson failed to show, as required by *Town North*, that MBank engaged in trickery, artifice, or device to obtain the guaranty. Simpson's seventh point of error is overruled.

■ In his eighth point of error, Simpson contends that the trial court erred in granting summary judgment because "a fact issue existed as to whether Appellant was under duress at the time of the execution of the guaranty." The courts in Texas have consistently followed the rule that, as a matter of law, there can be no duress unless (1) there is a threat to do something which a party threatening has no legal right to do; (2) there is some illegal exaction or some fraud or deception; and (3) the restraint is imminent and such as to destroy free agency without present means of protection. *Tower Contracting Co., Inc. of Texas v. Burden Bros., Inc.*, 482 S.W.2d 330, 335 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). Furthermore, economic duress may be claimed only when the party against whom it is claimed was responsible for claimant's financial distress. *First Texas Savings Association v. Dicker Center, Inc.*, 631 S.W.2d 179, 185–86 (Tex.App.—Tyler 1982, no writ).

■ It is not apparent from Simpson's pleadings or from his brief whether he is claiming duress or economic duress, or both. However, in any event, Simpson has failed to meet his burden of presenting summary judgment evidence on each element of his affirmative defense of duress. Simpson fails to cite to places in the record where he has produced any testimony or evidence relevant to the defense of duress. We have reviewed the record taking all evidence in favor of Simpson as true, and indulging in every reasonable inference in favor of Simpson, and we hold that Simpson did not meet his burden of presenting summary judgment evidence on every element of duress. There is no evidence that MBank was responsible for any financial distress to Simpson. There is no evidence that MBank did not have a legal right to tell Simpson that the October 10, 1980 sale of LumberKing to UFI and Cordes would not be consummated without Simpson's guaranty. There is no evidence that the free agency of Simpson was over-

come. Simpson's eighth point of error is overruled.

In his ninth point of error, Simpson contends that the trial court erred in awarding MBank attorney's fees because MBank failed to present evidence that the amount of attorney's fees claimed was reasonable. We agree.

The consolidated promissory note signed by W.W. Cordes, as president of LumberKing, on October 10, 1980, provides in pertinent part:

> Each of the Makers, Sureties, Endorsers, and Guarantors of this note hereby ... (iii) agrees to pay jointly and severally to the holder of this Note an additional reasonable amount [which in no event shall be less than ten percent (10%) of the amount then owing hereon] as attorneys' or collection fees if this Note is placed in the hands of an attorney for collection
> ...

This note is not signed by Simpson. Simpson signed a separate contract guaranteeing "... the prompt payment at maturity of any and all indebtedness and obligations ... which LumberKing Inc. (the "Borrower") is now, or hereafter may become liable or indebted to Bank...." The guaranty signed by Simpson also provides, "... if any sum due Bank by Guarantors is placed in the hands of an attorney for collection, ... then the Guarantors, jointly and severally, promise to pay Bank reasonable collection and attorney's fees ..."

A guarantor's liability on a debt is measured by the principal's liability *unless* a more extensive or a more limited liability is expressly set forth in the guaranty agreement. *Houston Furniture Distributors, Inc. v. Bank of Woodlake N.A.*, 562 S.W.2d 880, 884 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). By the terms of the guaranty agreement itself, Simpson's liability for attorney's fees was limited to *"reasonable* collection and attorney's fees"* (emphasis added). *See Spillman v. Self-Serv Fixture Co., Inc.*, 693 S.W.2d 656, 658 (Tex.App.—Dallas 1985,

writ ref'd n.r.e.) (creditor not entitled to award of full amount of fees from guarantor where guaranty expressly limited guarantor's liability for fees to a lesser amount). Because the extent of Simpson's obligation for attorney's fees is measured by the independent standard of reasonableness expressly set forth in the guaranty agreement, it was plaintiff MBank's burden to plead and prove that the amount claimed was, in fact, a reasonable attorney's fee, and this was a question of fact which could not be determined in the summary judgment proceeding. *See Houston Furniture*, 562 S.W.2d at 884; *Yandell v. Tarrant State Bank*, 538 S.W.2d 684, 689–90 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.), *aff'd on appeal after remand*, 561 S.W.2d 50 (Tex.Civ.App.—Fort Worth 1978, no writ).[1]

Appellee, in its brief, relies on the cases of *F.R. Hernandez Construction & Supply Co., Inc. v. National Bank of Commerce of Brownsville*, 578 S.W.2d 675 (Tex.1979); *Kuper v. Schmidt*, 161 Tex. 189, 338 S.W.2d 948 (Tex.1960); *Loomis v. Republic National Bank of Dallas*, 653 S.W.2d 75 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); and *Spring Branch Bank v. Mengden*, 628 S.W.2d 130 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), to rebut Simpson's ninth point of error. These cases are not applicable to the present case. We agree with appellee that the above cases accurately state the law regarding provisions for attorney's fees that are expressly set forth in promissory notes. However, the facts in the above cases concern suits between the *maker* of a promissory note and the holder of the note. In the case at bar, Simpson is not the maker of the consolidated LumberKing note, and is not per se liable on the promissory note. Rather, Simpson's liability stems solely from the separate contractual guaranty he executed. The guaranty provides that Simpson will pay *"reasonable"* attorney's fees. Appellees presented no evidence as to "reasonable" attorney's fees, but instead relied on the note's provi-

---

1. The 1976 Fort Worth court's opinion reversed and remanded the portion of the trial court's judgment awarding attorney's fees and affirmed the rest of the trial court's judgment. On re-

mand the trial court awarded attorney's fees. On appeal, this second award of attorney's fees was upheld in the Fort Worth court's 1978 opinion.

sions regarding attorney's fees. Since Simpson is liable to MBank by virtue of the guaranty, the note's provisions are inapplicable to him. Therefore, the trial court's judgment awarding "Fifty-Three Thousand Eight Hundred Twelve and 98/100 Dollars ($53,812.98) representing reasonable and necessary attorney's fees *at the stipulated contract amount* " is reversed (emphasis added).

Finally, in his tenth point of error, Simpson contends that the trial court erred in granting summary judgment because a fact issue existed "regarding failure to notify the guarantor of the repossession and sale of secured property." This point of error is urged by Simpson for the first time on appeal. Hence, Simpson's tenth point of error is not properly before us. *See Prudential Insurance Co. of America v. J.R. Franclen, Inc.,* 710 S.W.2d 568, 569 (Tex. 1986); Tex.R.Civ.P. 166–A(c) (Vernon Supp. 1986). Simpson's tenth point of error is overruled.

The trial court's judgment awarding $54,-812.98 in attorney's fees in favor of plaintiff MBank is reversed and MBank's claim for attorney's fees against Simpson is severed and remanded to the trial court for further proceedings. In all other respects, the trial court's summary judgment in favor of the MBank against Simpson is affirmed.