CECIL POND CONSTRUCTION
COMPANY, Appellant,

v.

ED BELL INVESTMENTS, INC., and
Federal Insurance Company,
Appellees.

No. 12–91–00177–CV.

Court of Appeals of Texas,
Tyler.

Oct. 28, 1993.

Richard L. Stone, Jacksonville, for appellant.

Harold H. Walker, Jr., Dallas, for appellees.

RAMEY, Chief Justice.

This appeal challenges the sufficiency of the evidence to support the jury findings on two affirmative defenses to a conversion suit [1]. The Appellant, Cecil Pond Construction Company, ("Pond Construction"), sued Appellees, Ed Bell Investments, Inc. ("Bell Investments") and Federal Insurance Company ("Federal") for Bell Investment's taking the proceeds of certain checks owed to Pond Construction. The jury found that the defendants did redirect and appropriate checks belonging to Pond Construction, but that Pond Construction had both waived its right to certain of the checks and was estopped from recovering on its claim for the proceeds of all of the checks. The trial court overruled Pond Construction's Motion for Judgment N.O.V. and entered a take-nothing judgment. With respect to Bell Investments we will reverse and render judgment as to three checks; the judgment will be affirmed with respect to Federal.

The parties to this action have a common history in the construction business. Pond Construction was incorporated and began doing business in 1981. Its president has always been Cecil Pond ("Pond"). Control and ownership of Pond Construction has changed on several occasions. We are primarily concerned with a transaction that occurred on February 24, 1987 (the "Acquisition Date"). Prior to that date, Pond Construction was wholly owned by Bell Investments, which also owned the real estate on which Pond Construction had its offices and much of the equipment used by Pond Construction in its business. On the Acquisition Date, Pond entered into an agreement with Bell Investments pursuant to which he effectively purchased all the stock of Pond Construction, as well as the related real estate and equipment mentioned above (the "Acquisition Agreement"). The Acquisition Agreement made no reference to the checks in dispute in this lawsuit.

Federal is in the business of supplying performance and payment bonds in connec-

---

1. The specific cause of action asserted here was identified in neither the original petition, the jury charge, the judgment, nor Pond Construction's brief on appeal. Bell Investments characterizes the action as one sounding in conversion in its appellate brief, and, for purposes of this appeal, that characterization is satisfactory.

tion with construction contracts. Because the amount of the bond premium for construction jobs such as those involved in this action is set by law, some bonding companies, including Federal, compete by returning to their insureds a percentage of the bond premium at the conclusion of a job. This partial refund of the premium is known as a "bond dividend." As of the Acquisition Date, three projects had been completed, and a bond dividend was expected, as follows:

| | |
|---|---|
| Pleasant Grove High School | $6,304.20 |
| Central Baptist Church | 710.40 |
| Robert E. Lee High School | 8,104.66 |
| Total | $15,119.26 [2] |

Additionally, bond dividends were anticipated on three additional projects which were completed after the Acquisition Date:

| | |
|---|---|
| Rains Elementary School | $4,082.00 |
| Jefferson High School | 7,709.40 |
| Jefferson Middle School | 1,796.00 |
| Total | $13,587.40 |

These bond dividend checks constitute the subject matter of this dispute.

The named principal on the bonds issued by Federal was Pond Construction, and Pond Construction paid the premiums. Bell Investments, Pond Construction's owner and parent corporation, supplied an agreement to indemnify Federal, as required by Federal. Pond Construction paid Bell Investments a fee for this agreement to indemnify Federal, but a fee considerably below the normal market rate for such accommodation.

The acquisition itself was handled informally. Pond negotiated on his own behalf; Bell Investments was represented by Phil Eyre ("Eyre"), at that time both a vice president of Pond Construction and a financial consultant to Bell Investments. Though an attorney drafted the three page Acquisition Agreement, no attorneys participated in the negotiations. Industry accounting practice does not require bond dividends to be treated as receivables, and neither Pond Construction nor Bell Investments reflected anticipat-ed bond dividends as assets on their balance sheets. The Acquisition Agreement was signed by Pond and Bell Investment's president, Ed Bell ("Bell").

Shortly after the Acquisition Date, Federal, at Bell Investment's request, changed the payee name on the pre-Acquisition Date bond dividend checks from "Pond Construction" to "Bell Investments", and had forwarded the new checks to Bell Investments. The three post-Acquisition Date checks were also eventually made payable and paid solely to Bell Investments.

Pond Construction soon thereafter brought this action for conversion.[3] In addition to generally denying the allegations, Bell Investments and Federal pled waiver and estoppel as affirmative defenses. The jury's relevant responses to the fifteen special issues are summarized as follows:

1) Bell Investments "cashed five (5) bond checks that belonged to Cecil Pond Construction Company after February 24, 1987, in the total sum of $26,312.60," but without conscious disregard for Pond Construction's rights. (Jury Question No. 1)

2) Federal reissued two checks originally payable to Pond Construction to Bell Investments and delivered three checks to Bell Investments jointly payable to Bell Investments and Pond Construction, in amounts totalling $26,312.60, but without conscious disregard for Pond Construction's rights. (Jury Question No. 2)

3) Pond Construction waived its right to receive bond dividend payments from Bell Investments for the jobs completed before the Acquisition Date, but not for the post-Acquisition Date jobs. (Jury Questions Nos. 6 and 7)

4) Similarly, Pond Construction waived its right to receive bond dividend payments from Federal for the pre-Acquisition

2. These figures are taken from the Plaintiff's Original Petition. By the time of trial it appears undisputed that the total bond dividend payable for the Pleasant Grove High School and the Robert E. Lee High School jobs amounted to a total of $12,017.80, making the total in this column $12,728.20.

3. Pond Construction also alleged a right to recover $11,594.04 in Worker's Compensation rate overcharges, but having failed to secure favorable jury findings, does not complain here of that finding.

Date jobs, but not for the post-acquisition Date jobs. (Jury Questions Nos. 10 and 11)

5) Pond Construction is estopped from receiving any bond dividends with respect to both Bell Investments and Federal. (Jury Questions Nos. 8, 9, 12, and 13)

■ Pond Construction raises four points of error in this appeal, each of which challenges the sufficiency of the evidence supporting Bell Investments' affirmative defenses of waiver and estoppel. Pond Construction claims in its first point that the trial court erred in not granting its motion for judgment, which was made after it rested, but before Bell Investments had presented its evidence. The trial court treated this as a motion for directed verdict and denied it. This motion was premature. Pond Construction's first point of error is therefore overruled.

Pond Construction's second point of error asserts that the trial court erred in failing to grant its motion for Judgment N.O.V., because as a matter of law, it was entitled to prevail on the record. The motion asserted that there was no evidence to support the jury findings of waiver and estoppel. The third point of error claims that that the evidence was factually insufficient to support the jury findings of waiver and estoppel. The fourth point of error, also asserting factual insufficiency, contends that the jury's affirmative findings of waiver and estoppel were against the overwhelming weight of the evidence. Because Pond Construction did not have the burden of proof on the affirmative defense issues, the issue of factual insufficiency is correctly raised in the third point of error; we overrule the fourth point of error.

■ The second and third points of error will be considered together. A Motion for Judgment N.O.V. requires the reviewing court to examine the evidence in a light most favorable to the jury's findings, considering only the evidence and the inferences that support the verdict and rejecting any contrary evidence and inferences. *Multi–Moto v. ITT Commercial Finance,* 806 S.W.2d 560, 565 (Tex.App.—Dallas 1990, writ denied). The granting of such motion is only proper if

there was no evidence to support the jury findings dispositive of the case, with the focus of review on evidence and inferences tending to support the verdict. *Wal–Mart Stores, Inc. v. Hinojosa,* 827 S.W.2d 43, 44–45 (Tex.App.—Corpus Christ 1992, no writ). The standard for review for an appellant attacking the factual sufficiency of an adverse finding on an issue on which it did not have the burden of proof requires the appellate court to set aside the verdict only if the evidence is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ The estoppel issues will be considered first. The elements of equitable estoppel are:

(1) a false representation or concealment of material facts,

(2) made with knowledge, actual or constructive, of those facts,

(3) with the intention that it should be acted on,

(4) to a party without knowledge, or the means of knowledge of those facts,

(5) who detrimentally relied upon the representation.

*Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991). All of the elements of estoppel must be present to invoke the doctrine. *Douglas v. Aztec Petroleum Corp.,* 695 S.W.2d 312, 317 (Tex.App.—Tyler 1985, no writ). There was no evidence that Pond falsely represented or concealed material facts from Bell or Bell Investments. More significantly, the record was undisputed that Bell was neither without knowledge pertaining to the bond dividend checks nor without means of securing desired information pertaining to the financial status of Pond Construction. In *Simpson v. M Bank Dallas, N.A.,* 724 S.W.2d 102, 108 (Tex.App.—Dallas 1987, writ ref'd n.r.e.) the defendant sought to set up the defense of estoppel to an action on a guaranty, claiming that the Bank misled him regarding the financial strength of his co-guarantors. In affirming a summary judgment for the Bank the *Simpson* court observed that the evidence was undisputed that the defendant never attempted to ascertain his co-guarantors' financial condi-

tion and had the means to investigate it. In the instant case Bell Investments had complete access to Pond Construction's financial affairs and clearly more direct knowledge than the plaintiff in *Simpson* had to the books of his co-guarantors; in fact, the parties agreed in writing here that Bell Investments and its representative in charge of its construction company had at least as much knowledge of the bond dividend checks as Pond. We therefore, hold that there was no evidence to support the jury's findings that Pond Construction's conduct estopped it from recovering the proceeds from the bond dividends.

The jury findings of waiver, however, rest on different principles and are supported by other evidence. Waiver is the "voluntary and intelligent relinquishment of a known right or intentional conduct inconsistent with the assertion of a known right." *Zimmerman v. First American Title Ins.*, 790 S.W.2d 690, 697 (Tex.App.—Tyler 1990, writ denied). Evidence for waiver typically takes one of three forms: 1) evidence of an express renunciation of a known right; 2) evidence of silence or inaction with respect to a known right for a period of time sufficient to indicate an intention to waive; or 3) conduct of a party knowingly possessing a right of such a nature as to mislead the other party into an honest belief that a waiver was intended or assented to. *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ. App.—Amarillo 1981, writ ref'd n.r.e.).

Since waiver can be inferred from conduct, waiver of a right may be implied by silence alone when considered in the circumstances of a particular transaction. *Valdina Farms v. Brown, Beasley & Assoc.*, 733 S.W.2d 688, 692 (Tex.App.—San Antonio 1987, no writ). But "[w]aiver by implication should not be inferred contrary to the intention of the party whose rights would be injuriously affected thereby, unless the opposite party has been misled to his or her prejudice." *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex.App.—Texarkana 1992, writ denied).

There was no direct evidence of Pond Construction's express renunciation of its right to the bond dividends. Nor is there any evidence of waiver arising by virtue of silence over the course of a significant period of time.

It was, however, undisputed that Pond knew that the performance and payment bonds had been procured through Bell's long-standing relationship with the bonding company and its local agent, and additionally that an essential condition to the issuance of the bonds was Bell's agreement to indemnify Federal for any losses. Pond was aware that all of the bonds were issued and the premiums paid while Pond Construction was wholly owned by Bell Investments. Furthermore, the three bonded jobs on which the jury found waiver were commenced and completed while Bell Investments owned the construction company; those dividend checks had been earned and could have been requested and cashed by Pond prior to the Acquisition Date. Although the precise total value of the bond dividends at the time of the Acquisition Agreement may not have been known by the parties, it was undisputed that the total proceeds would have affected the value of Pond Construction at the time of the sale.

Because there was undisputed evidence that the bonds could not have been procured or purchased but for the financial strength of Bell Investments, because the three jobs on which the jury found waiver had been completed, the premiums paid by Bell's company and the bond dividends fully-earned prior to the Acquisition Date, and because Pond, knowing all this, failed to assert any claim to these mature obligations (which did not appear on a balance sheet), the jury was entitled to infer that Pond's silence misled Bell Investments into believing that Pond Construction had relinquished any claim that it might have to these fully-earned bond dividends.

We therefore, hold that the evidence was factually sufficient to support the jury's findings that Pond Construction "waived its right to receive bond dividends" from Bell Investments pertaining to the construction projects completed *before* the Acquisition Date. There being no attack on the sufficiency of the evidence to support the jury findings on

subsequently completed construction projects upon which no finding of waiver was made, those findings are undisturbed. Therefore, we sustain Pond Construction's point of error number two as it relates to the estoppel findings, but overrule the point as it relates to waiver. Based on the above review of the evidence, we also overrule point of error number three as it relates to the insufficiency of the evidence to support the jury finding of waiver of the profits completed before the Acquisition Date.[4]

We note that Pond Construction did not assign as error the jury's findings to Question Nos. 12 and 13 that Pond Construction was estopped from recovering from Federal; it has therefore waived any such objection. The take-nothing judgment entered with respect to Federal is **affirmed.** The judgment as to Bell Investments is **reversed** and judgment **rendered** that Pond Construction recover thirteen thousand, five hundred eighty-seven dollars and forty cents ($13,587.40), against Bell Investments, plus interest; one half of the costs are assessed against Pond Construction and Bell Investments, respectively. Pond Construction's further request for attorney's fees in its brief is neither warranted by the points of error raised nor supported in the record; it is therefore denied.

---

4. Inasmuch as we previously concluded that there was no evidence in the record to support the jury's finding of estoppel, we need not con- sider the contention raised in the third point of error that the evidence was insufficient to sup- port such finding.