ABB Kraftwerke v. Brownsville Barge











NUMBER 13-01-00756-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


ABB KRAFTWERKE AKTIENGESELLSCHAFT

AND ABB ALSTOM POWER (SWITZERLAND) LTD.,

F/K/A ABB POWER GENERATION, LTD., Appellants,

 

v.



BROWNSVILLE BARGE & CRANE, INC., Appellee.

 


On appeal from the 404th District Court of Cameron County, Texas.


 


O P I N I O N



Before Justices Hinojosa, Castillo, and Chavez (1)


Opinion by Justice Hinojosa



 This case requires us to determine the validity of an indemnity agreement. In three
issues, appellants, ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power
(Switzerland) Ltd., f/k/a ABB Power Generation, Ltd. ("ABB"), contend the trial court erred
in granting the motions for summary judgment of appellee, Brownsville Barge & Crane, Inc.
("Brownsville Barge"). We affirm.

A. Background and Procedural History

 This case arises from the shipment of a large turbine generator from Manheim,
Germany to Monterrey, Mexico, through the Port of Brownsville. ABB manufactured and
arranged for the shipment of the 325-metric-ton generator from Germany to the Port of
Brownsville. ABB contracted with C. H. Robinson ("Robinson") to transport the generator
from the Port of Brownsville to Monterrey. 

 Robinson contracted with Schaefer Stevedoring ("Schaefer") to provide stevedoring
services at the Port of Brownsville. Schaefer was to offload the generator from a lash
barge and load it onto a railway car alongside the dock. Schaefer entered into a "Lifting
Services Agreement" with Brownsville Barge for its floating crane barge, the "Atlantic
Giant," to make the lift. The Atlantic Giant was the only floating crane between Houston,
Texas and Tampico, Mexico, capable of lifting this generator because of its size and
configuration. In the months preceding the lift, Brownsville Barge was given partial
payment for the use of the Atlantic Giant. All necessary arrangements and permits to
move the generator into Mexico were also obtained.

 Just before the lift, Brownsville Barge approached representatives of ABB and
Robinson and asked them to sign an indemnity agreement, attached as an exhibit to the
Lifting Services Agreement entered into between Brownsville Barge and Schaefer. 
Brownsville Barge informed the representatives that it would not provide the lifting
equipment if ABB's representative did not sign the indemnity agreement. ABB signed the
indemnity agreement; Robinson refused.

 Oscar Zamora, Sr., was a longshoreman at the Port of Brownsville. Zamora was
the gang foreman of the longshoremen hired by Schaefer to perform the lift. During the
lift, while the generator was suspended by the crane, a jacking plate fell from the generator
and fatally injured Zamora. Zamora's family filed suit against ABB, Robinson, and
Brownsville Barge for wrongful death. The lawsuit eventually settled.

 Brownsville Barge filed a cross-claim against ABB, asserting ABB owed it
contractual indemnity for the legal fees it incurred in defending against the Zamora family's
claims. Brownsville Barge filed a motion for partial summary judgment and a no evidence
motion for summary judgment, and the trial court granted both motions. ABB also filed a
motion for summary judgment, which the trial court denied. This appeal ensued. 

B. Issues Presented


 In three issues, ABB contends the trial court erred in granting Brownsville Barge's
motions for summary judgment because: (1) Brownsville Barge did not have a valid
contract with ABB; (2) there was no valid consideration for the indemnity agreement; and
(3) the indemnity agreement was an unenforceable adhesion contract. ABB does not
complain of the trial court's denial of its motion for summary judgment.

C. Standard of Review

 We review the grant of a traditional summary judgment de novo. Alejandro v. Bell,
84 S.W.3d 383, 390 (Tex. App.-Corpus Christi 2002, no pet.). To sustain a summary
judgment, we must determine that the pleadings and summary judgment evidence
establish that no genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law. McFadden v. Am. United Life Ins. Co., 658 S.W.2d 147, 148
(Tex. 1983). We accept all evidence favorable to the nonmovant as true, indulge the
nonmovant with every reasonable inference, and resolve any doubt in the nonmovant's
favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 549 (Tex. 1985). Summary
judgment is proper if the movant disproves at least one element of each of the plaintiff's
claims or affirmatively establishes each element of an affirmative defense to each claim. 
Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).

 By contrast, a no-evidence summary judgment presented under Texas Rule of Civil
Procedure 166a(i) is equivalent to a pretrial directed verdict, and this Court applies the
same legal sufficiency standard on review. Zapata v. The Children's Clinic, 997 S.W.2d
745, 747 (Tex. App.-Corpus Christi 1999, pet. denied). A no-evidence motion for
summary judgment must be granted if: (1) the moving party asserts that there is no
evidence of one or more specified elements of a claim or defense on which the adverse
party would have the burden of proof at trial; and (2) the respondent produces no summary
judgment evidence raising a genuine issue of material fact on those elements. See Tex.
R. Civ. P. 166a(i). In reviewing a no-evidence summary judgment, we review the record
in the light most favorable to the nonmovant to determine whether more than a scintilla of
evidence was presented on the challenged elements of the nonmovant's claim. See Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002).

D. Lack of Enforceable Contract

 In its first issue, ABB complains that the trial court erred in granting summary
judgment on Brownsville Barge's indemnity claim because Brownsville Barge did not have
a valid contract with ABB. 

 The indemnity agreement was attached as an exhibit to the Lifting Services
Agreement. ABB asserts the Lifting Services Agreement was only between Brownsville
Barge and Schaefer. ABB argues that it was not a party to the Lifting Services Agreement.

 Whether ABB was a party to the Lifting Services Agreement becomes relevant to
our analysis only if we find that the indemnity agreement cannot stand on its own as a 
contract between ABB and Brownsville Barge. A contract of indemnity is an original
obligation between the contracting parties, independent of other agreements. Joseph
Thomas, Inc. v. Graham, 842 S.W.2d 343, 346 (Tex. App.-Tyler 1992, no writ). Indemnity
contracts are construed under normal rules of contract construction. Associated Indem.
Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 284 (Tex. 1998). The indemnity
agreement at issue must meet the criteria of a binding contract to be an original obligation
and stand on its own.

 Under Texas law, the requirements of a binding contract are: (1) an offer; (2) an
acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4)
each party's consent to the terms; and (5) execution and delivery of the contract with the
intent that it be mutual and binding. Labor Ready Cent. III, L.P. v. Gonzalez, 64 S.W.3d
519, 522 (Tex. App.-Corpus Christi 2001, no pet.). Consideration is also a fundamental
element of a valid contract. Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 408-09 (Tex.
1997).

 Because indemnity agreements involve an extraordinary shifting of risk, the supreme
court has imposed certain fair-notice requirements. See Dresser Indus., Inc. v. Page
Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993). These requirements incorporate the
express negligence doctrine and mandate conspicuousness. Id. The express negligence
doctrine requires that the intent of the party seeking indemnity from the consequences of
that party's own future negligence must be expressed in unambiguous terms within the four
corners of the contract. Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 708 (Tex.
1987). The conspicuous requirement demands that significant terms must appear on the
face of the agreement in such a way as to attract the attention of a reasonable person. 
Dresser Indus., 853 S.W.2d at 508.

 Brownsville Barge's representative approached Roland Schneider, ABB's authorized
representative, with an indemnity agreement containing the following terms:

 ABB and or C. H. Robinson Company shall release, defend, indemnify and
hold Brownsville Barge & Crane, Inc., its directors, officers, employees,
agents and subcontractors (Contractor Group) harmless from and against all
liability, claims and losses, damages, punitive damages, costs, expenses,
attorney's fees, demands, suits, and causes of action of every kind (the
"claims"), arising on account of personal injury or death or damage to
property in any way incident to or in connection with or arising out of the
"Lifting Services Agreement" dated March 22, 1999 between Schaefer
Stevedoring, Inc. and Brownsville Barge & Crane, Inc. regardless of the sole,
joint or concurrent negligence, negligence per se, gross negligence, statutory
fault, or strict liability of any member of the Contractor Group or the
unseaworthiness of any vessel owned operated or chartered by any member
of the Owner Group without limit and without regard to the cause or causes
thereof that may have caused or contributed to the claim, to the extent such
indemnity obligations are not prohibited by applicable law.


 By its very terms, the agreement purports to indemnify Brownsville Barge for
liabilities resulting from its own future negligence. The agreement provides that ABB would
"indemnify and hold harmless Brownsville Barge & Crane, Inc. . . . from and against all
liability . . . arising on account of personal injury or death . . . arising out of the 'Lifting
Services Agreement' . . . regardless of the sole, joint or concurrent negligence" of
Brownsville Barge employees. Brownsville Barge's intent as to what risk it intended to shift
to ABB is clear from the four corners of the document. See Atlantic Richfield Co. v.
Petroleum Personnel, Inc., 768 S.W.2d 724, 726 (Tex. 1989) (holding that language which
sufficiently defines the parties' intent meets the requirements of the express negligence
rule).

 At the presentment of the indemnity agreement, the record reflects that Brownsville
Barge made clear its position that execution of the lift was dependent on ABB signing the
agreement. Thereafter, Schneider, ABB's Deputy General Manager, duly executed the
indemnity agreement. It is undisputed that Schneider had full authority to bind ABB and
to negotiate or consent to the terms of the indemnity agreement. Following execution of
the agreement, Schneider consulted with Sandro Lepori, his supervisor in Switzerland. 
Lepori agreed that Schneider had appropriately signed the agreement. Thus, ABB
accepted the offer when it returned the signed indemnity agreement to Brownsville Barge.

 ABB argues that Brownsville Barge did not sign the indemnity provision. However,
the absence of a signature on a contract does not necessarily destroy its validity. Simmons
& Simmons Constr. Co., Inc. v. Rea, 155 Tex. 353, 286 S.W.2d 415, 418 (1955); Williams
v. Brown & Root, Inc., 947 S.W.2d 673, 677 (Tex. App.-Texarkana 1997, no writ). As long
as the parties give their consent to the terms of the contract, and there is no evidence of
an intent to require both signatures as a condition precedent to it becoming effective as a
contract, signatures are not a required factor in the making of a valid contract. Rea, 286
S.W.2d at 417-18.

 There is no evidence in the record that Brownsville Barge did not consent to the
terms of the indemnity agreement. The offer was presented with the clear understanding
that Brownsville Barge would offer the services of the Atlantic Giant on the condition that
ABB signed the indemnity agreement. 

 Thus, based on the foregoing objective evidence, we hold there was a proper offer,
acceptance, consent to the terms of the agreement, and intent of the parties that the
contract be mutual and binding. See Sutton v. Estate of McCormick, 47 S.W.3d 179, 182
(Tex. App.-Corpus Christi 2001, no pet.) (using an objective standard to examine whether
there was a meeting of the minds). Appellant's first issue is overruled.

E. Lack of Consideration

 In its second issue, ABB contends the trial court erred in granting Brownsville
Barge's motion for summary judgment because there was no consideration to validate the
indemnity agreement. ABB asserts that Brownsville Barge was already obligated to
perform the lift under the terms of the Lifting Services Agreement signed between
Brownsville Barge and Schaefer, and that the indemnity agreement is void for lack of new
consideration.

 A contract must be based upon a valid consideration, in other words, mutuality of
obligation. Fed. Sign., 951 S.W.2d at 408. Consideration is defined as "either a benefit
to the promisor or a loss or detriment to the promisee. Surrendering a legal right
represents valid consideration." Northern Natural Gas Co. v. Conoco, Inc., 986 S.W.2d
603, 607 (Tex. 1998). A contract that lacks consideration lacks mutuality of obligation and
is unenforceable. Fed. Sign, 951 S.W.2d at 409.

 There is a presumption that a written contract is supported by consideration. Cortez
v. Nat'l Bank of Commerce, 578 S.W.2d 476, 479 (Tex. Civ. App.-Corpus Christi 1979, writ
ref'd n.r.e.). As the party asserting lack of consideration, ABB had the burden to prove that
there was no consideration for the indemnity agreement. See Roark v. Stallworth Oil &
Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1991); Rodriguez v. Southwestern Drug Corp., 619
S.W.2d 469, 472 (Tex. Civ. App.-Houston [14th Dist.] 1981, no writ).

 Brownsville Barge's summary judgment evidence established that Brownsville Barge
told ABB's representative that Brownsville Barge would not provide the Atlantic Giant
unless ABB signed the indemnity agreement. In exchange for its agreement to indemnify
Brownsville Barge, ABB received the benefit of the use of Brownsville Barge's lifting
equipment so that its generator could be timely transported to Monterrey. We conclude
that the exchange of consideration that passed between the parties, consisting of a
promise to indemnify in exchange for the lifting services, was valid consideration to support
the indemnity agreement.

 ABB's contention that Brownsville Barge was already obligated to perform the lift
under the Lifting Services Agreement misinterprets the terms of the Lifting Services
Agreement which provided that "[a]t such time as [Schaefer] may request [Brownsville
Barge] to perform lifting services and provided [Brownsville Barge] accepts to perform such
services for [Schaefer], [Schaefer] shall issue to [Brownsville Barge] a work order setting
forth the particulars of the lifting services to be performed . . . . All work . . . for lifting
services shall be governed by the terms and conditions of this Agreement . . . ." The Lifting
Services Agreement did not obligate Brownsville Barge to perform any services; rather, it
stated the terms that would apply if ABB elected to use Brownsville Barge's services and
Brownsville Barge agreed to provide such services.

 We hold that ABB has failed to meet its burden to prove that there was no valid
consideration for the written indemnity agreement. Accordingly, appellant's second issue
is overruled.

F. Economic Duress

 In its third issue, ABB contends the trial court erred in granting Brownsville Barge's
motion for summary judgment because the indemnity agreement was coerced by economic
duress.

 The elements of economic duress are: (1) a threat to do something that a party has
no legal right to do; (2) illegal exaction or some fraud or deception; and (3) imminent
restraint such as to destroy free agency without present means of protection. King v.
Bishop, 879 S.W.2d 222, 223 (Tex. App.-Houston [14th Dist.] 1994, no writ); Simpson v.
MBank Dallas, N.A., 724 S.W.2d 102, 109 (Tex. App.-Dallas 1987, writ ref'd n.r.e.).

 ABB contends that Brownsville Barge "put a gun to ABB's head" and forced it to sign
the indemnity agreement in the face of Brownsville Barge's refusal to otherwise provide the
Atlantic Giant. Brownsville Barge's "threat" to the ABB representative may have been
constraining to ABB, but it was not necessarily a threat to commit an act Brownsville Barge
had no legal right to do. ABB and Brownsville Barge were not parties to any agreement
at the time the offer was made. Therefore, there was no legal obligation for Brownsville
Barge to break.

 Additionally, the record does not indicate that ABB was forced to accept the
indemnity agreement against its will. ABB could have refused to execute the indemnity
agreement as Robinson chose to do. This action may have caused ABB to incur additional
expenses in procuring the services of a crane comparable to the Atlantic Giant, yet this
inconvenience does not amount to a destruction of free will. See Simpson, 724 S.W.2d
at 109.

 Finally, Brownsville Barge is not the party responsible for ABB's financial distress. 
Economic duress may be claimed only when the party against whom it is claimed was
responsible for claimant's financial distress. Deer Creek Ltd. v. North Am. Mortgage Co.,
792 S.W.2d 198, 203 (Tex. App.-Dallas 1990, no writ). A claim of economic duress must
be based on the acts or conduct of the opposite party and not merely on the necessities
of the purported victim, or on a fear of what a third person might do. First Tex. Sav. Ass'n
of Dallas v. Dicker Ctr., Inc., 631 S.W.2d 179, 186 (Tex. App.-Tyler 1982, no writ). The
mere fact that a person enters into a contract with reluctance, or as a result of the
pressures of business circumstances, does not, of itself, constitute economic duress
invalidating the contract. Id.

 The record evidence shows that ABB's compulsion to deliver the generator without
further delay to the original purchasers in Mexico was due to its original agreement with the
purchasers. According to the terms of the purchase agreement, a delay in delivery would
commence the accrual of liquidated damages. Because this financial distress originated
from a party other than Brownsville Barge, it fails to support a claim of economic duress. 
See Simpson, 724 S.W.2d at 109.

 Brownsville Barge merely presented ABB with a business decision - sign the
indemnification agreement or face the loss of Brownsville Barge's lifting equipment. Such
a situation does not amount to economic duress. 

 We conclude that Brownsville Barge did not threaten to do any act that it had no
legal right to do, ABB was not forced to sign the indemnity agreement against its free will,
and any economic pressure arose from ABB's agreement with a third party. We hold that
the trial court did not err in finding that essential elements of duress were absent as a
matter of law. Appellant's third issue is overruled.

 We affirm the trial court's order granting appellee's motions for summary judgment.


 FEDERICO G. HINOJOSA

 Justice



Opinion delivered and filed this the

28th day of August, 2003.
1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court
of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).