FEDERAL DEPOSIT INSURANCE CORP., In Its Corporate Capacity, and as Receiver of Security National Bank, Plaintiff–Appellee,

v.

Fred T. NOBLES, Defendant–Appellant.

No. 89–1605.

United States Court of Appeals, Fifth Circuit.

May 21, 1990.

C.H. Brockett, Jr., Brockett, Cunningham & Bates, Midland, Tex., for defendant-appellant.

Mary P. Davis, FDIC, Washington, D.C., for plaintiff-appellee.

Before GOLDBERG, REAVLEY and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

This case requires us to determine whether the terms of a guaranty contract preclude the guarantor from arguing that the creditor breached its good faith duty (a duty we assume, without deciding, exists) to preserve the collateral securing the guaranteed debt by failing to perfect its security interest in that collateral. We conclude that the terms of the contract preclude the guarantor from making such an argument, and we affirm the district court's summary judgment for the creditor.

I.

On November 26, 1984, appellant Fred T. Nobles executed a continuing guaranty guaranteeing any and all indebtedness of Swivelbar, Inc. ("Swivelbar") to Western Bank of Midland, Texas ("Western"). On that same date, Swivelbar executed a promissory note to Western in the amount of $215,000, together with security agreements pledging all of Swivelbar's inventory and accounts receivable as security for the loan from Western. The November 26 note was renewed on August 8, 1986, in the principal amount of $200,000. Western never filed a financing statement with the Secretary of the State of Texas or the Midland County Clerk's Office in order to perfect its interest in the inventory and accounts receivable.

On September 4, 1986, the Texas Banking Commissioner declared Western insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. The FDIC, in its corporate capacity, purchased certain assets of Western including the Swivelbar note and the Nobles guaranty. Like Western, the FDIC did not file a

financing statement to perfect its security interest in Swivelbar's inventory until February of 1988. By that time, however, the inventory had been seized by a judgment creditor and sold at a sheriff's sale.

Swivelbar defaulted on the promissory note and Nobles did not pay the Swivelbar indebtedness pursuant to his guaranty. The FDIC brought suit against Nobles to collect under the terms of the guaranty. Nobles defended by claiming that the FDIC had breached its duty of good faith by failing to perfect its security interest in Swivelbar's inventory. FDIC filed a motion for summary judgment. In granting FDIC's motion, the trial court found that Nobles was precluded from asserting any "good faith" defense by the explicit terms of the guaranty. Alternatively, the court ruled that there was no duty of good faith owed by the FDIC to Nobles.

On appeal, Nobles argues three points: (1) that the FDIC owes a duty to a guarantor of a debt to exercise good faith in the preservation, application and disposition of collateral that serves as security for such debt, (2) that there is a genuine issue of material fact as to whether the FDIC breached its duty of good faith, and (3) that Nobles did not, by the terms of the guaranty, waive his right to argue that the FDIC breached its duty of good faith. Because the terms of the guaranty agreement are determinative in this case, we find it unnecessary to address the first two issues raised by Nobles.[1]

## II.

In its Memorandum Opinion, the trial court wrote that Nobles

is precluded from [arguing that the FDIC breached its duty of good faith] for

the reason that any "good faith" defense is effectively waived by the terms of the guaranty agreement he signed.... The Court finds that [Nobles] is estopped from asserting a defense of breach of good faith when in fact [in paragraph 8 of the guaranty agreement] he waived "lack of diligence or care" regarding the collateral on the part of the holder of the guaranty.

*Federal Deposit Ins. Corp. v. Nobles*, No. Mo–88–CA–252, slip op. at 5–6 (W.D.Tex. June 9, 1989). Nobles argues that the district court erred in two respects on this point. First, Nobles contends that the language of paragraph 8 of the guaranty does not constitute a waiver of the duty of good faith. Nobles emphasizes that the guaranty does not specifically waive the duty of good faith nor does it waive the obligation—that he contends is imposed on the FDIC—of preserving the collateral by perfecting a security interest in it. Second, Nobles argues that the duty of good faith is imposed by statute[2] and that "the obligations of good faith, diligence, reasonableness and care prescribed by [the Texas Uniform Commercial Code ("UCC")] may not be disclaimed by agreement." Tex. Bus. & Com.Code Ann. § 1.102(c) (Vernon 1968).[3] So Nobles argues that the terms of the guaranty agreement do not relieve the FDIC of its duty of good faith to preserve the collateral by perfecting its security interest in the property, nor does the law allow such a duty to be waived by contract.

As to Nobles first argument, we believe paragraphs 8 and 11 of the guaranty agreement clearly preclude Nobles from arguing that the FDIC breached its duty by failing to perfect its security interest in the collateral. Specifically, paragraph 8 provides, in part, that Nobles

agree[s] that ... no release of ... any security ... and no delay or omission or lack of diligence or care in exercising any right or power with respect to ... any

---

**1.** For purposes of this opinion, therefore, we will assume, without deciding, that the law imposes upon the FDIC a good faith duty to preserve and protect the collateral securing the guaranteed debt by perfecting its security interest in the collateral.

**2.** The Texas Uniform Commercial Code ("UCC"), found at Title I of the Texas Business and Commerce Code, provides that "[e]very con-

tract or duty within this title imposes an obligation of good faith in its performance or enforcement." Tex.Bus. & Com.Code Ann. § 1.203 (Vernon 1968).

**3.** All statutory references cited hereinafter are to the Tex.Bus. & Com.Code Ann. (Vernon 1968) unless otherwise indicated.

security ... shall ... impair or affect ... the obligations, duties and liabilities of [Nobles].... [Nobles] agree[s] that it shall not be necessary or required that [FDIC] ... seek to realize upon any security ... or exercise ... any other right ... to which [FDIC] is ... entitled in connection with ... any security ... as a condition of enforcing the liability of [Nobles].... [Nobles] agree[s] that [he] shall have [no] recourse ... against [FDIC] by reason of any action [FDIC] may take or omit to take ... in connection with any security....

Paragraph 11 [4] continues by stating that [i]f the Obligations [of Swivelbar] are ... secured by any collateral, [Nobles] agree[s] that [FDIC] may ... at its discretion ... release all or any part of such collateral, without notice to or consent by [Nobles], and without ... limiting or releasing the liability of [Nobles]....

We find this language to be a clear and unambiguous waiver of any right that Nobles otherwise might have had to argue that the FDIC had a duty to protect and preserve Swivelbar's collateral by filing a financing statement. Less sweeping language has been found effectively to waive any right that a guarantor might have to require a creditor to file a financing statement. *See United States v. Proctor,* 504 F.2d 954, 956–57 (5th Cir.1974); *United States v. Flasher Co.,* 460 F.Supp. 231, 233 (S.D.Tex.1977). We find no significance in the fact that the guaranty does not specifically mention either a duty of good faith or the obligation to file a financing statement. The unambiguous language of these two paragraphs relieves the FDIC of any duty that might otherwise exist to preserve and to protect the collateral. Where the terms of a guaranty are unambiguous, as we believe paragraphs 8 and 11 are, we will enforce the guaranty according to those terms. *Federal Deposit Ins. Corp. v. Cardinal Oil Well Servicing Co.,* 837 F.2d 1369, 1371 (5th Cir.1988).

■ As to Nobles second argument, that the UCC prevents the duty of good faith from being waived by agreement [5], we do not believe that the guaranty is governed by the UCC. The guaranty in this case is separate and apart from the promissory note. A guaranty that is a separate document is not considered a negotiable instrument and does not fall within the scope of the UCC. *Uniwest Mortgage Co. v. Dadecor Condominiums, Inc.,* 877 F.2d 431, 434–35 (5th Cir.1989); *Simpson v. MBank Dallas, N.A.,* 724 S.W.2d 102, 105–06 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *Eikel v. Bristow Corp.,* 529 S.W.2d 795, 799–800 (Tex.Civ.App.—Houston [1st Dist] 1975, no writ). Therefore, general contract law, rather than the terms of the UCC, applies. *Simpson,* 724 S.W.2d at 106. Under general contract law, waivers, such as those found in paragraphs 8 and 11 of the guaranty agreement, are valid and enforceable. *Id.*

■ Assuming, arguendo, that the guaranty is an "instrument" within the meaning of the UCC,[6] and therefore falls within the scope of the UCC, we nevertheless believe that the language in paragraphs 8 and 11 precludes Nobles from arguing that the FDIC breached a duty to preserve the collateral by failing to perfect its security interest in the property. *See National Acceptance Co. of Am. v. Demes,* 446 F.Supp. 388, 390–91 (N.D.Ill.1977); *Simpson,* 724 S.W.2d at 106; *Lawyers Title Ins. Co. v. Northeast Tex. Dev. Co.,* 635 S.W.2d 897, 899 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). While Nobles phrases the issue somewhat differently, he essentially is arguing that he should be discharged from his obligations under the guaranty because the FDIC "impaired" (i.e., failed to preserve and protect) the collateral securing the debt that he guaranteed. The UCC provides that a "holder [the FDIC] discharges any party to the instrument to the extent that *without such party's consent* the holder ... unjustifiably impairs any collat-

---

**4.** While the district court did not rely on paragraph 11 in reaching its decision, it was before the court and could serve as a basis for granting summary judgment.

**5.** The UCC provides that "the obligations of good faith, diligence, reasonableness and care prescribed by [the UCC] may not be disclaimed by agreement." § 1.102(c).

**6.** *See* §§ 3.104, 3.416.

eral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." § 3.606(a)(2) (emphasis added). Paragraphs 8 and 11 of the guaranty agreement constitute *consent* on the part of Nobles giving the FDIC the power to "impair" the collateral by not perfecting its security interest. *See Demes,* 446 F.Supp. at 390–91 (applying identical language in the Uniform Commercial Code of Illinois); *Simpson,* 724 S.W.2d at 106; *Lawyers Title Ins.,* 635 S.W.2d at 899; *see also United States v. Vahlco Corp.,* 800 F.2d 462, 465–67 (5th Cir.1986) (suretyship defenses found in Uniform Commercial Code may be waived by express language of guaranty agreement).

### III.

Nobles is precluded by the terms of the guaranty from arguing that the FDIC breached its duty by failing to perfect its security interest in the collateral. There being no genuine issue of material fact, and the FDIC being entitled to judgment as a matter of law, we AFFIRM.