**Cyril J. RABINOWITZ, Appellant,**

v.

**The CADLE COMPANY II, INC., Appellee.**

**No. 05–97–00160–CV.**

Court of Appeals of Texas, Dallas.

May 11, 1999.

Randall K. Lindley, Beverly A. Whitley, Bell, Nunnally & Martin, PLLC, Dallas, for appellee.

Before Justices KINKEADE, BRIDGES, and ROACH.

## OPINION

JOHN R. ROACH, Justice.

In this deficiency suit, Cyril J. Rabinowitz appeals the judgment granted in favor of The Cadle Company II, Inc. (Cadle) following a bench trial. Cadle sued Rabinowitz to recover the deficiency due after the sale of collateral securing a promissory note guaranteed by Rabinowitz. In two points of error, Rabinowitz contends the trial court erred in granting judgment for Cadle because (1) the waiver provisions of the guaranty relied on by Cadle do not expressly waive the commercially reasonable disposition of the collateral and (2) a guarantor of an obligation secured by collateral in a transaction governed by sections 9.501 and 9.504(c) of the Texas Business and Commerce Code cannot waive, in a written guaranty agreement, the duty of a secured party to dispose of the collateral in a commercially reasonable manner. Because we conclude Rabinowitz could not waive the commercially reasonable disposition of the collateral, we sustain the second point of error. We reverse the trial court's judgment and render judgment that Cadle take nothing.

FACTUAL BACKGROUND

This case was tried before the court on stipulated facts pursuant to Texas Rule of Civil Procedure 263. Accordingly, we will review only the correctness of the application of law to the facts by the trial court, and we will not infer or find any facts not shown by the stipulation of the parties. *See Crow–Southland Joint Venture No. 1 v. North Fort Worth Bank,* 838 S.W.2d 720, 723 (Tex.App.-Dallas 1992, writ denied).

Kenneth E. Horn, K.E. Horn & Associates, Dallas, for appellant.

In July 1988, Rabinowitz, acting in his capacity as president of Southern States Enterprises, Inc. (Southern States), signed a promissory note to the order of Search National Bank in the amount of $100,000, plus interest. Payment of the note was secured by certain collateral and by the unconditional guaranty of Rabinowitz. Paragraph eight of the guaranty provided that Rabinowitz

> waive(s) any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to [i]ndebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the undersigned will not assert, plead or enforce against the Bank any defense of waiver, release, discharge in bankruptcy, statute of limitations, res judicata, statute of frauds, anti-deficiency statute, fraud, incapacity, minority, usury, illegality or enforceability which may be available to Borrower.... The undersigned expressly agree(s) that the undersigned shall be and remain liable for any deficiency remaining after foreclosure of any mortgage or security interest securing [i]ndebtedness, whether or not liability of Borrower ... for such deficiency is discharged pursuant to statute or judicial decision.

The note was due on October 16, 1988 and remains unpaid. After default, Search took possession of the collateral and, afterwards, Southern States and Rabinowitz waived in writing "any right to written notice from [Search] of the time after which any public sale, private sale or other intended disposition is to be made of the Collateral pursuant to Section 9.504(c) of the Texas Business and Commerce Code." The collateral was sold and the proceeds credited to the amount due under the note. However, the proceeds from the sale of the collateral were less than the amount then due under the note, leaving a deficiency.

Subsequently, Search was declared insolvent, and the Federal Deposit Insurance Corporation (FDIC) was appointed its receiver. The FDIC as receiver acquired the note and guaranty and sold it to Cadle. Cadle is the owner and holder of the note and guaranty. Cadle made demand on Rabinowitz for the payment of the balance due under the note and guaranty, but that demand was refused. Thereafter, Cadle brought this lawsuit against Rabinowitz seeking to recover from him, as guarantor, the amount still owing under the note. Rabinowitz responded to Cadle's claim by asserting that, among other things, because Search did not dispose of the collateral in a commercially reasonable manner, Cadle lost any right to recover the deficiency. The parties stipulated that:

> Although the Collateral was sold and its proceeds credited under the Note, there is no evidence of a "commercially reasonable disposition" of the Collateral.

> Cadle relies on the waiver provisions in the Guaranty to satisfy its burden of proof on the issue of a "commercially reasonable disposition or sale" of the Collateral.

> Cadle and Rabinowitz agree that all facts have been stipulated and the sole legal issue to be decided by [the trial court] is whether Rabinowitz has, by virtue of the waiver provisions in the Guaranty, waived his right to insist upon a commercially reasonable sale of collateral and whether such waiver is enforceable under Texas law.

The trial court ultimately entered judgment for Cadle and ordered Rabinowitz to pay Cadle $30,000, plus prejudgment and postjudgment interest and attorney's fees. This appeal ensued.

### WAIVER OF COMMERCIALLY REASONABLE DISPOSITION OF COLLATERAL

In his second point of error, Rabinowitz asserts that a guarantor of an obligation secured by collateral in a transaction governed by sections 9.501 and 9.504(c) of the Texas Business and Commerce Code cannot waive the duty of a secured party to

dispose of the collateral in a commercially reasonable manner.

■ As a preliminary matter, Cadle contends that chapter nine of the Code does not apply to "guaranty transactions." In particular, Cadle argues that "an unconditional guaranty is not a *secured transaction* at all. It is not secured by anything." We need look no further than chapter nine itself in rejecting Cadle's contention. Section 9.102 provides:

(a) Except as otherwise provided in Section 9.104 on excluded transactions, this chapter applies

(1) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts; ...

TEX. BUS. & COM.CODE ANN. § 9.102(a) (Vernon Supp.1999). Here, the transaction was between Cadle, who stood in the shoes of Southern States and was the holder of the note, and Rabinowitz and Search. The transaction between these parties was intended to create a security interest in the collateral. Therefore, we conclude chapter nine applies to the transaction. Contrary to Cadle's suggestion, we will not consider the guaranty, which exists only by virtue of the transaction, independent of the transaction in this analysis. Having so concluded, we turn to the application of chapter nine.

■ Section 9.501(c) provides that a *debtor* cannot waive the commercially reasonable disposition of collateral by a secured party. TEX. BUS. & COM.CODE ANN. § 9.501(c) (Vernon 1991). We could find no Texas cases, nor were we cited to any, construing the term debtor in the context of section 9.501(c).[1] However, a number of Texas cases have held that a guarantor is treated as a debtor under the provisions of section 9.504. *See Chase Commercial Corp. v. Datapoint Corp.,* 774 S.W.2d 359, 363 (Tex.App.-Dallas 1989, no writ) (citing *Adams v. Waldrop,* 740 S.W.2d 32, 33 (Tex.App.-El Paso 1987, no writ)); *Carroll v. General Elec. Credit Corp.,* 734 S.W.2d 153, 154 (Tex.App.-Houston [1 st Dist.] 1987, no writ); *Hernandez v. Bexar County Nat'l Bank,* 710 S.W.2d 684, 687 (Tex.App.-Corpus Christi), *writ ref'd n.r.e. per curiam,* 716 S.W.2d 938 (Tex.1986); *Peck v. Mack Trucks, Inc.,* 704 S.W.2d 583, 585 (Tex. App.-Austin 1986, no writ); *see also ITT Commercial Fin. Corp. v. Riehn,* 796 S.W.2d 248, 255 (Tex.App.-Dallas 1990, no writ) ("[A] guarantor of the secured indebtedness has the same right as his principal to challenge the commercial reasonableness of a lender's sale following repossession.").[2] Thus, under section 9.504, guarantors are entitled, after default of the primary obligor and repossession of the collateral by the lender, to the commercially reasonable disposition by the lender of the collateral securing the

1. We acknowledge that the Fifth Circuit Court of Appeals has concluded the Texas Supreme Court would *not apply section 9.501 to* a guarantor. *See Steinberg v. Cinema N' Drafthouse Sys., Inc.,* 28 F.3d 23, 25 (5 th Cir. 1994). In reaching its decision, the court relied solely on *FDIC v. Coleman,* 795 S.W.2d 706 (Tex.1990), and the fact that the *Coleman* court did not apply the anti-waiver provision of section 1.102(c) to two guarantors' claims that the secured creditor violated its duty of good faith under the Code. (Section 1.102(c) provides that the obligation of good faith cannot be "disclaimed by agreement" or, in other words, waived.) Reasoning that the requirements of good faith and commercial reasonableness are "inextricably intertwined," the Fifth Circuit concluded that, because the

*Coleman* court did not apply the anti-waiver provisions to a good faith claim by guarantors, then guarantors could also waive the right to complain about commercial reasonableness. The *Coleman* court, however, never mentioned, much less addressed the applicability of, section 1.102(c). Furthermore, it disposed of the UCC good faith argument by concluding that the guarantors had not brought a "good faith" claim. For these reasons, we find the reasoning in *Steinberg* wholly unpersuasive.

2. Although the *Steinberg* court acknowledged the existence of these cases, it chose not to follow them.

transaction for which the guaranty is given.

We see no reason why the term "debtor" should have a different meaning when imposing a duty to dispose of collateral in a commercially reasonable manner than when prohibiting the waiver of that duty. Furthermore, construing a guarantor as a debtor under section 9.501(c) is consistent with the article nine definition of debtor as "the person who owes payment or other performance of the obligation secured." *See* TEX. BUS. & COM.CODE ANN. § 9.105(a)(4) (Vernon Supp.1999). We hold that section 9.501(c) applies to a guarantor of a secured transaction and therefore prohibits a guarantor, as well as the primary obligor, from waiving the duty of a lender in possession of collateral to dispose of the collateral in a commercially reasonable manner. Therefore, Rabinowitz could not waive Cadle's duty to dispose of the collateral in a commercially reasonable manner.

■ The burden of establishing that the sale of collateral was conducted in a commercially reasonable manner is on the creditor seeking to recover the balance remaining on the obligation after the sale of the collateral. *Greathouse v. Charter Nat'l Bank–Southwest*, 851 S.W.2d 173, 176–77 (Tex.1992); *Sunjet, Inc. v. Ford Motor Credit Co.*, 703 S.W.2d 285, 287 (Tex.App.-Dallas 1985, no writ); *Friedman v. Atlantic Funding Corp.*, 936 S.W.2d 38, 40 (Tex.App.-San Antonio 1996, no writ). The parties stipulated that there is no proof the collateral in this case was disposed of in a commercially reasonable manner. Indeed, Cadle relies solely on Rabinowitz's "waiver" to relieve it of the burden of presenting such proof. Because we have concluded that Rabinowitz, as a guarantor, could not waive Cadle's duty to dispose of the collateral in a commercially reasonable manner, Cadle has failed to meet its burden. We sustain the second point of error. Rabinowitz is discharged from any further obligation imposed by the guaranty in this case. *See Greathouse*,

851 S.W.2d at 176 (explaining that commercially reasonable disposition of collateral is condition to recovery on deficiency suit). Because of our disposition of Rabinowitz's second point of error, we need not consider his first point of error. *See* TEX. R.APP. P. 47.1.

We reverse the judgment of the trial court and render judgment that Cadle take nothing by its claim.