Opinion filed June 16,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00196-CV 

                                                    __________

 

                                       C.
KYLE SMITH, Appellant

                                                             V.

                         COMMUNITY
NATIONAL BANK, Appellee



 

                                   On
Appeal from the 238th District Court

                                                           Midland
County, Texas

                                                 Trial
Court Cause No. CV-46,394

 



 

                                                                  O
P I N I O N

             Trans-Gulf
Drilling Services, Inc. and Trans-Gulf Rig #1, LP (collectively Trans-Gulf)
executed a note and security agreement dated October 29, 2007, in favor of Community
National Bank (CNB).  The promissory note was in the original principal amount
of $2,336,182 and was secured by a drilling rig, related equipment, and an
insurance policy on the rig.  C. Kyle Smith, the director of Trans-Gulf, issued
a personal guaranty to CNB in which he guaranteed the amount due to CNB under
the note.

            Trans-Gulf
filed for Chapter 11 bankruptcy in January 2008.  On February 28, 2008, CNB
sought relief from the bankruptcy court to foreclose its security interest in
the rig and equipment.  In March, CNB also brought this action against Smith as
guarantor of the note.  On October 28, 2008, the rig collapsed and became incapable
of operating.  Trans-Gulf’s insurance company was notified of the collapse, and
a claim was submitted for the value of the rig.

            The
bankruptcy trustee entered into a stipulation with CNB to assign to CNB all of
the rights of the trustee, Trans-Gulf, and the bankruptcy estate in the rig,
the equipment, and the related insurance claim.  On March 1, 2009, the bankruptcy
court entered an agreed order approving the stipulation and assigning and
transferring the rig, equipment, and insurance claim from Trans-Gulf’s estate
to CNB.               

            CNB
filed a traditional motion for summary judgment against Smith.  On June 5,
2009, the trial court granted summary judgment to CNB and rendered judgment
against Smith in the amount of $2,828,612.26.  In Smith’s appeal, he presents
three issues to this court:

(1)
Whether the assignment of the rig, equipment, and insurance claim to CNB was an
acceptance by CNB of the collateral in full or partial satisfaction of
Trans-Gulf’s indebtedness;

 

(2)
Whether the assignment of the rig, equipment, and insurance claim to CNB
constituted value which should be credited against the amount guaranteed by
Smith; and

 

(3)
Whether CNB’s entry into the stipulation constituted an accord and satisfaction
of Trans-Gulf’s and Smith’s indebtedness.

 

            CNB
agrees that it should provide Smith a credit for the insurance proceeds it
received and the amount it received from the sale of the equipment, less its
expenses.  In its brief, CNB states that it received $1.9 million in insurance
proceeds on August 5, 2009, and $102,400 from the sale of the equipment.  CNB
claims that, after deducting expenses incurred in connection with the insurance
settlement and sale of the equipment, it offered Smith a credit against the
judgment of $1,810,872.  These amounts are not part of the record for the
summary judgment and cannot be considered as part of this appeal.  However,
Smith is due a credit if CNB sold the rig and equipment and received insurance
proceeds.

            We
affirm the trial court’s judgment except for the amount of damages.  We sustain
the second issue in part, disagreeing with Smith’s contention that the value of
the credit should be determined at the time of the agreed order.  The amounts
of the proceeds from the insurance settlement and from the sale, as well as the
expenses incurred by CNB, should be easily determined.  We remand to the trial
court for a determination of the amount of the credit that Smith is due for the
insurance proceeds and sale proceeds received by CNB after deducting its
expenses incurred in connection with the insurance settlement and the sale of
the equipment. 




 

Standard
of Review

A
trial court should grant a motion for summary judgment if the moving party
establishes that (1) no genuine issue of material fact exists and (2) the
moving party is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991).  Once the
movant establishes his right to a summary judgment, the nonmovant must come
forward with evidence or law that precludes summary judgment.  City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979).  In
a case where the defendant has alleged an affirmative defense and the plaintiff
has filed a motion for summary judgment establishing that there is no material
fact issue concerning the elements of the plaintiff’s claim, the motion should
be granted unless the defendant comes forward with summary judgment proof
sufficient to raise an issue of fact with respect to the elements of the
affirmative defense.  Nichols v. Smith, 507 S.W.2d 518, 520 (Tex. 1974);
“Moore” Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934 (Tex.
1972).  When reviewing a summary judgment, we take as true evidence favorable
to the nonmovant and indulge every reasonable inference and resolve any doubts
in favor of the nonmovant.  Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420,
425 (Tex. 1997); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548-49 (Tex. 1985).

Law
of Guaranty

To
recover for breach of the guaranty agreement, CNB had to establish (1) the
existence and ownership of the guaranty agreement, (2) the terms of the
underlying contract by the holder, (3) the occurrence of the conditions upon
which liability is based, and (4) the failure or refusal to perform the promise
by the guarantor.  Escalante v. Luckie, 77 S.W.3d 410, 416 (Tex.
App.—Eastland 2002, pet. denied).  The record reflects that CNB produced
evidence establishing each of the four requirements.

A
secured party is not required to dispose of the collateral through foreclosure
before suing on the underlying obligation.  Christian v. Univ. Fed. Sav.
Ass’n, 792 S.W.2d 533, 535 (Tex. App.—Houston [1st Dist.] 1990, no writ).  Where
a guaranty agreement so provides, a lender need not liquidate its collateral
before obtaining judgment against a guarantor.  Fed. Deposit Ins. Corp. v.
Coleman, 795 S.W.2d 706, 709-710 (Tex. 1990).  CNB was not required to sell
the rig and equipment or settle with the insurance company before filing an
action against Smith.




 

Did
CNB Accept the Collateral in Full or Partial Satisfaction of the Debt?

Smith
argues that the stipulation and agreed order assigned title to the rig,
equipment, and insurance claim to CNB as opposed to only transferring
possession of the collateral to CNB.  From this premise, Smith concludes that
the assignment constituted full or partial satisfaction of the debt or an
accord and satisfaction of the debt.  Smith’s conclusions do not necessarily follow
from his premise.

The
agreed order transferred title to CNB.  Neither the stipulation nor the agreed
order provided that CNB accepted the assignment of the collateral in
satisfaction of Trans-Gulf’s indebtedness to it.  Nor was there any provision
where CNB released Trans-Gulf or Smith from any claims CNB had against them. 
Further, Smith agreed in paragraphs 6 and 7 of his guaranty agreement that full
or partial release of Trans-Gulf would not affect Smith’s liability under the
guaranty.  Also, in paragraph 7, Smith waived all defenses other than discharge
by payment in full, which would include the affirmative defense of accord and
satisfaction.

Paragraph
6 of the guaranty agreement provided in part:

The liability of the
Undersigned shall not be affected or impaired by any of the following acts or
things (which Lender is expressly authorized to do, omit or suffer from time to
time, both before and after revocation of this guaranty, without notice to or
approval by the Undersigned):  . . . (iv) any full or partial release of,
settlement with, or agreement not to sue Borrower or any other guarantor or
other person liable in respect of any Indebtedness, . . . (vii) any foreclosure
or enforcement of any collateral security.

 

Paragraph 7 of
the guaranty agreement set forth certain waivers by Smith: 

The
Undersigned waives any and all defenses, claims and discharges of Borrower, or
any other obligor, pertaining to Indebtedness, except the defense of discharge
by payment in full.  Without limiting the generality of the foregoing, the
Undersigned will not assert, plead, or enforce against Lender any defense of
waiver, release, statute of limitations, res judicata, statute of frauds,
fraud, incapacity, minority, usury, illegality or unenforceability which may be
available to Borrower or any other person liable in respect of any
Indebtedness, or any setoff available against Lender to Borrower or any such
other person. . . . The Undersigned expressly agrees that the Undersigned shall
be and remain liable, to the fullest extent permitted by applicable law, for
any deficiency remaining after foreclosure of any mortgage or security interest
securing Indebtedness.    

 




 

CNB’s Arguments on Waiver

            CNB
argues that, in the guaranty agreement, Smith waived his arguments that there
was acceptance of the collateral in full or partial satisfaction of the debt and
that there was accord and satisfaction.  To determine this question, we must
analyze Smith’s guaranty and the applicability of the Texas Uniform Commercial
Code to the facts of this case.[1] 
We conclude that Smith’s argument on appeal that there was full or partial
satisfaction of the debt was not waived, although we ultimately conclude that
the assignment did not constitute full or partial satisfaction.  Smith’s
argument on accord and satisfaction was waived by his guaranty agreement.

General Provisions of Chapter 9 of the
Texas Business and Commerce Code

            Chapter
9 of the Texas Business and Commerce Code applies to any transaction that
creates a security interest in personal property by contract.  Tex. Bus. & Com. Code Ann. § 9.109(a)
(Vernon 2011).  A guaranty agreement that is part of a transaction that creates
a security interest is also governed by this chapter.  Rabinowitz v. Cadle
Co. II, Inc., 993 S.W.2d 796, 799 (Tex. App.—Dallas 1999, pet. denied).   
Chapter 9 defines “collateral” as “the property subject to a security
interest.”  Section 9.102(a)(12).  A “debtor” is “a person having an interest,
other than a security interest or other lien, in the collateral, whether or not
the person is an obligor.”  Section 9.102(a)(28).  An “obligor” is “a person
that, with respect to an obligation secured by a security interest in . . . the
collateral, (i) owes payment or other performance of the obligation, (ii) has
provided property other than the collateral to secure payment or other
performance of the obligation, or (iii) is otherwise accountable in whole or in
part for payment or other performance of the obligation.”  Section 9.102(a)(60). 
A “secondary obligor” is “an obligor to the extent that: (A) the obligor’s
obligation is secondary; or (B) the obligor has a right of recourse with
respect to an obligation secured by collateral against the debtor, another
obligor, or property of either.”  Section 9.102(a)(72).

The
comments to the Uniform Commercial Code further explain that a debtor has a
property interest in the collateral.  Section 9.102 cmt. 2a.  A secondary
obligor is a person who may have a stake in the proper enforcement of the
security interest because of his obligation to pay a secured debt.  Id. 
The general definition provision of the Texas Uniform Commercial Code defines
“surety” to include “a guarantor or other secondary obligor.”  Section 1.201(b)(39)
(Vernon 2009).  

It
is undisputed that CNB had a security interest in the collateral and, thus,
that Chapter 9 of the Texas Business and Commerce Code would apply.  The
guaranty agreement was part of the same transaction that created the security interest. 
Smith, as a guarantor, had an interest in the proper enforcement of the
security interest as this would affect the amount of debt he ultimately would
have to pay.  Smith was a secondary obligor.

Cases
Involving Guaranties and the Uniform Commercial Code

Some
cases have emphasized a distinction between a situation where the guaranty was
part of the same transaction that created the security interest held by the
creditor and a situation where the guaranty guaranteed all borrowings of a
debtor from a creditor.  For a guaranty as part of the same transaction, see Rabinowitz,
993 S.W.2d 796, and Coleman, 795 S.W.2d at 709-10.  For the guaranty of
all borrowings, see Federal Deposit Insurance Corp. v. Nobles, 901 F.2d
477, 480 (5th Cir. 1990).  For a case that discusses both situations, see Royal
Palm Senior Investors, LLC v. Carbon Capital II, Inc., No. 08 Cv.
4319(BSJ), 2009 WL 1941862 (S.D.N.Y. July 7, 2009).

CNB
cites Nobles, where a guarantor argued that a guaranty agreement did not
waive the statutory duty of good faith and the obligation to preserve
collateral by perfecting a security interest.  Nobles, 901 F.2d at 479-80. 
The court held that the guaranty agreement unambiguously waived this duty.  Id.
at 480.  The guarantor also argued that the UCC prevented the duty of good
faith from being waived by the guaranty agreement.  Id. at 479.  The
court held that the UCC did not govern the guaranty agreement because the
guaranty was separate and apart from the promissory note.  Id. at 480. 
Therefore, general contract law applied, and under general contract law,
waivers are valid and enforceable.  Id.

Even
if the UCC applied, however, the court in Nobles interpreted the
guarantor’s argument as being that he should be discharged from his obligations
under the guaranty because the FDIC impaired the collateral securing the debt
that he guaranteed.  Id.  The UCC provided that a “holder [the FDIC]
discharges any party to the instrument to the extent that without such party’s
consent the holder . . . unjustifiably impairs any collateral for the
instrument given by or on behalf of the party or any person against whom he has
a right of recourse.”  Id. at 480-81 (alterations in original).  The
court held that, even under the UCC, the waivers in the guaranty agreement
constituted consent on the part of the guarantor to impair the collateral.  Id.
at 481.

            In Rabinowitz,
however, the Dallas Court of Appeals held that a guarantor was protected by the
anti-waiver provision in the former version of Chapter 9 of the Texas Business
and Commerce Code.  993 S.W.2d 796.  Rabinowitz, acting in his capacity as
president of Southern States Enterprises, Inc., signed a promissory note to the
order of Search National Bank.  Id. at 798.  Payment of the note was
secured by collateral and by the unconditional guaranty of Rabinowitz.  The
guaranty agreement contained a waiver paragraph similar to paragraph 7 in the guaranty
agreement signed by Smith.

Southern
States defaulted on the note.  Id.  Search National Bank took possession
of the collateral.  The collateral was sold, and the proceeds were credited to
the amount due under the note.  Search National Bank became insolvent, and the
note and guaranty were sold to Cadle.  Cadle demanded that Rabinowitz pay the
balance due under the note and guaranty, and Rabinowitz refused.  Cadle sued
Rabinowitz, and Rabinowitz argued that, because Search National Bank did not
dispose of the collateral in a commercially reasonable manner, Cadle lost any
right to recover the deficiency.  At trial, Cadle relied on the waiver
provisions in the guaranty, and the trial court entered judgment for Cadle.

The
Dallas Court of Appeals in Rabinowitz first held that Chapter 9 of the
Texas Business and Commerce Code applied to the guaranty because the guaranty
existed only by virtue of a transaction in which the parties intended to create
a security interest.  Id. at 799 (quoting former Section 9.102 (“(a)
Except as otherwise provided in Section 9.104 on excluded transactions, this
chapter applies (1) to any transaction (regardless of its form) which is
intended to create a security interest in personal property or fixtures
including goods, documents, instruments, general intangibles, chattel paper, or
accounts.”)).  The court then noted that a guarantor was covered by former Section
9.501(c) (predecessor to the current Section 9.602), which prohibited waiver of
a number of rights and duties under the chapter, including the duty of a
creditor in possession of collateral to dispose of the collateral in a
commercially reasonable manner.  Id. at 799-800.  Thus, the duty of
commercial reasonableness could not be waived by the guarantor.  Id. at
800.        

            Nobles
can be distinguished from the case before us as it dealt with the alleged
violation of good faith on the part of the creditor in failing to perfect a
security interest in collateral and to satisfy part of the debt obligation from
the disposition of collateral.  901 F.2d 477.  The court in Nobles found
that the guarantor had waived these complaints through waivers in his guaranty
agreement.  However, Nobles did not involve the anti-waiver provision in
Chapter 9; it dealt with the general good faith provision in Chapter 1 of the
UCC.  Also, in deciding that the guaranty agreement was not covered by the UCC,
Nobles did so under Chapter 3 of the UCC, which deals with negotiable
instruments.  The application of Chapter 9, however, does not depend on whether
an agreement is covered by Chapter 3.

Chapter
9 applies to “a transaction, regardless of its form, that creates a security
interest in personal property or fixtures by contract.”  Section 9.109(a)(1). 
Several of the provisions of Chapter 9 depend on a party’s relationship to the
security interest in order to become applicable.  For instance, Section 9.602
applies to the rights granted to a debtor or obligor by certain sections of the
chapter.  Even if an agreement is not covered by Chapter 3, it might still be
covered by Chapter 9.  See Section 3.102(b) (Vernon 2002) (stating that,
in the event of a conflict between Chapter 3 and Chapter 9, Chapter 9
governs).                          

            Rabinowitz
is closer to this case because Rabinowitz involved the anti-waiver
provision in Chapter 9.  In Rabinowitz, the issue was whether the
guarantor had waived the creditor’s duty to dispose of collateral in a commercially
reasonable manner.  Chapter 9 prevented this duty from being waived.  See
Section 9.602(7) (citing Section 9.610(b) (“Every aspect of a disposition of
collateral, including the method, manner, time, place, and other terms must be
commercially reasonable.”)).  Likewise, pertinent to this case, Section 9.602
prevents waiver of the procedures in Sections 9.620, 9.621, and 9.622,
involving acceptance of collateral in satisfaction of an obligation.  A
principal distinction between Rabinowitz and the case before us is that
the parties in Rabinowitz stipulated that there was no evidence that the
disposition was done in a commercially reasonable manner.  Rabinowitz,
993 S.W.2d at 798.  The parties in this case dispute whether an acceptance of
collateral in satisfaction of the debt occurred.

The
paragraphs in the guaranty were sufficient to waive Smith’s common-law
affirmative defense of accord and satisfaction.  Accord and satisfaction is not
listed in Section 9.602 as something a debtor or obligor may not waive. 
Although accord and satisfaction is not mentioned in the guaranty agreement,
paragraph 7 provided that Smith waived “any and all defenses, claims and
discharges of [Trans-Gulf], or any other obligor, pertaining to Indebtedness,
except the defense of discharge by payment in full.”

Section
9.602, however, prohibits waiver of Smith’s argument that there was an
acceptance of collateral in full or partial satisfaction of the obligation.  Section
9.602(10) (relating to the waiver of rules from Sections 9.620, 9.621, and
9.622).  Smith contends that the obligation has been fully or partially
satisfied by the assignment in the agreed order and CNB’s acceptance of the
collateral.  If Smith were correct, the obligation would have been reduced in
the amount to the extent consented to by the debtor.  See Section
9.622(a)(1).  Smith, as a secondary obligor, is entitled to place CNB’s
compliance with these provisions in issue.  See Section 9.626(a).  Smith,
therefore, could not waive his argument under Chapter 9.

Acceptance
of Collateral in Full or Partial Satisfaction of Indebtedness

Section
9.620 of the Texas UCC sets out the procedures by which a secured party can
accept collateral in full or partial satisfaction of an obligation it secures. 
Section 9.620. A secured party may accept collateral in partial satisfaction of
an obligation only if the debtor consents to the terms of the acceptance in a
record authenticated after default.  Section 9.620(a)(1), (c)(1).  To be
an effective acceptance of collateral, the secured party must consent to the
acceptance in an authenticated record or send a proposal to the debtor.  Section
9.620(b)(1).

In
addition, a secured party may accept collateral in full satisfaction of an
obligation only if the debtor agrees to the terms of the acceptance in a record
authenticated after default or the secured party sends to the debtor a proposal
proposing to accept the collateral in full satisfaction of the obligation it
secures and the secured party does not receive a notification of objection
authenticated by the debtor within twenty days after the proposal is sent.  Section
9.620(a)(1), (c)(2).  The secured party must also send a proposal of acceptance
of collateral to any party that claims an interest in the collateral.  Sections
9.620(a)(2), 9.621(a).  A secured party’s acceptance of collateral in full or
partial satisfaction of the obligation it secures discharges the obligation to
the extent consented to by the debtor.  Section 9.622(a)(1).

An
acceptance of collateral transfers all of a debtor’s rights in the collateral
to the secured party and terminates any subordinate interest in the
collateral.  Section 9.622(a)(2)-(4).  A transfer of title to collateral to a
secured party is not of itself a disposition of collateral and does not relieve
the secured party of its duties under the UCC.  Section 9.619(c).  A secured
party need not prove compliance with the provisions relating to collection,
enforcement, disposition, or acceptance unless the debtor or a secondary
obligor places the secured party’s compliance in issue.  Section 9.626(a)(1). 
A debtor or obligor may not waive or vary the rules set out in Sections 9.620,
9.621, 9.622, and 9.626.  Section 9.602(10), (13).

Here,
there was no indication in the stipulation or the agreed order that the parties
intended the assignment of the collateral to constitute either full or partial
satisfaction of the obligation secured by it.  CNB did not consent to the
assignment being an acceptance in full or partial satisfaction.  At the time,
the value of the collapsed rig and equipment was unknown, and the amount of
possible insurance proceeds was unknown.  Moreover, in general, a release of a
claim must state the claim to be released.  Victoria Bank & Trust Co. v.
Brady, 811 S.W.2d 931, 938 (Tex. 1991).  As no mention of the indebtedness
was made in the stipulation or the agreed order, CNB’s claims concerning the
indebtedness were not released.

Smith
argues that the rig, equipment, and insurance claim had to be valued as of the
time of the assignment pursuant to the agreed order.  We disagree.  Smith cites
Hawkins v. Walker, 233 S.W.3d 380, 392 (Tex. App.—Fort Worth 2007, pet.
denied).  The court in Hawkins was dealing with a fraud case and was
referring to how damages are determined in a fraud case.  Hawkins is not
relevant.  Chapter 9 of the Texas Business and Commerce Code is applicable to
this case and provides the framework for determining the rights of Smith and
CNB.

After
default, a secured party may take possession of the collateral.  Section 9.609(a)(1). 
As an alternative to an acceptance of the collateral under Section 9.620, a
secured party may dispose of the collateral according to the procedures set out
in Section 9.610.  Section 9.610 provides as follows:

(a)
After default, a secured party may sell, lease, license, or otherwise dispose
of any or all of the collateral in its present condition or following any
commercially reasonable preparation or processing.

 

(b)
Every aspect of a disposition of collateral, including the method, manner,
time, place, and other terms, must be commercially reasonable.  If commercially
reasonable, a secured party may dispose of collateral by public or private
proceedings, by one or more contracts, as a unit or in parcels, and at any time
and place and on any terms.

 

Smith did not
challenge the commercial reasonableness of CNB’s disposition of the collateral.

            After
a disposition of the collateral under Section 9.610, the secured party shall apply
the cash proceeds in the following order:  (1) to the reasonable expenses
associated with the disposition, (2) to the satisfaction of obligations secured
by the security interest under which the disposition is made, (3) to the
satisfaction of obligations secured by a subordinate security interest on the
collateral, and (4) to a secured party that is a consignor of the collateral. 
Section 9.615(a).  After applying the proceeds in this manner, any surplus is
paid to the debtor.  Section 9.615(d)(1).  And the obligor is liable for any
deficiency.  Section 9.615(d)(2).

            These
provisions imply that a reduction of the amount of the debt obligation takes
place after the secured party has disposed of the collateral.  These provisions
should be compared to where a secured party accepts collateral in full or
partial satisfaction of the obligation, the debtor consents to that acceptance
in accord with Section 9.620, and the obligation is discharged to the extent
consented to by the debtor.  Section 9.622(a)(1).  

            Smith
argues that the collateral had to be valued at the time of the assignment to
prevent a double recovery by CNB.  This argument depends on Smith’s
characterization of the conveyance to CNB as an acceptance of the collateral in
satisfaction of the obligation.  However, an alternative characterization would
be that this conveyance was in preparation of the disposition of the collateral
under Section 9.610.  See Section 9.619(c) (a transfer of title to
collateral to a secured party is not of itself a disposition of collateral and
does not relieve the secured party of its duties under the UCC).  Under Section
9.615(d)(2) and paragraph 7 of his guaranty, Smith would be liable for any
deficiency after the collateral was sold and the insurance proceeds were paid
to CNB pursuant to the insurance settlement.  There would be no double
recovery.

            Smith
also argues that a valuation at the time of the assignment under the agreed
order was necessary because the assignment extinguished statutory protections
afforded to Smith.  Smith mistakenly reasons that the assignment barred him
from paying off the debt and redeeming the collateral.  Smith also used this
same argument to claim that there was an accord and satisfaction because
Trans-Gulf and CNB had entered into a new agreement (the stipulation) for the
disposition of the collateral that changed his rights (his statutory right of
redemption was barred by the assignment) without including him in the process. 
That is not correct.

            As a
secondary obligor, Smith had the right to redeem collateral.  Section 9.623.  Redemption
can occur at any time before a secured party (1) has collected collateral under
Section 9.607 (the provision dealing with a secured party collecting payments
from account debtors or any other person obligated on collateral); (2) has
disposed of collateral or entered into a contract for its disposition under
Section 9.610 (the provision allowing a secured party to sell, lease, license,
or otherwise dispose of collateral in a commercially reasonable manner); or (3)
has accepted collateral in full or partial satisfaction of the obligation it
secures under Section 9.622.  Section 9.623(c).

Again,
Smith’s argument that the conveyance deprived him of his statutory right of
redemption depends on his characterization of the conveyance to CNB as an
acceptance of collateral in full or partial satisfaction of the obligation.  If
the conveyance was not in satisfaction of the obligation, which we have held, he
still had a right of redemption until CNB disposed of the collateral under
Section 9.610.

            Smith
also made an argument that his was the only evidence as to the value of the rig
and that the rig was valued at $5.1 million.  That evidence was from an
appraisal of the rig that was made long before the rig collapsed.  We found Smith’s
argument that the trial judge should have found that the value of the rig far
exceeded CNB’s debt difficult to understand.

Constructive
Strict Foreclosure

            Smith
argues that, even though the stipulation and agreed order did not state that
the assignment of the collateral was an acceptance in full or partial
satisfaction of the underlying obligation, the fact that all of Trans-Gulf’s
ownership interests in the collateral were transferred amounted to an
acceptance by CNB under Section 9.620.  Smith attempts to draw a distinction
between the case, as here, where title passes to the creditor and the case
where only possession passes to the creditor.  The matter is not that simple.  In
effect, Smith is asking this court to follow the doctrine of constructive
strict foreclosure as represented by the case of Tanenbaum v. Economics
Laboratory, Inc., 628 S.W.2d 769, 771-72 (Tex. 1982), where the
court held that the legislature in former Section 9.505(b) (the predecessor
statute to Section 9.620) intended to put the creditor to an election to either
sell the repossessed collateral or to retain the collateral in complete
satisfaction of the debt.

            In Tanenbaum,
the creditor sued for a deficiency judgment following default on a secured note
and repossession of the collateral.  The creditor had sold equipment to debtor,
retaining a security interest in the equipment.  628 S.W.2d at 770.  The
equipment did not work.  Id.  The debtor asked the creditor to take
possession of the collateral and to credit his account in full.   Id. 
The creditor took possession of the collateral and, after deciding that it
would not be economically feasible to repair the equipment, scrapped it.  Id. 
The creditor did not provide notice to debtor of this disposition.  Id. 
For a creditor to dispose of collateral, notice had to be sent to the debtor.  Id. 
Former Section 9.505(b) (predecessor to Section 9.620) read:

[A] secured party in
possession may, after default, propose to retain the collateral in satisfaction
of the obligation.  Written notice of such proposal shall be sent to the debtor
if he has not signed after default a statement renouncing or modifying his
rights under this subsection.

 

Id. at
771.  The court held that the legislature intended to put the creditor to an
election to either sell the repossessed collateral or to retain the collateral
in complete satisfaction of the debt.  Id. at 771-72.  Because the creditor
did not comply with the notice requirements upon its disposition of the
collateral and because it destroyed the collateral, the court deemed the creditor
as having elected to retain the collateral in full satisfaction of the
obligation.  Id. at 772.  Thus, the creditor could not seek a deficiency
judgment against the debtor.  Id.

            In Cohen
v. Rains, 769 S.W.2d 380, 381 (Tex. App.—Fort Worth 1989, writ denied), the
creditor appealed a judgment denying him the balance due on a promissory note
and foreclosure of his security interest in 80,000 shares of common stock of
debtors’ corporation because of a finding that he had exercised ownership
rights in the collateral.  The debtors had defaulted on their obligation.  Id.
at 382.  Pursuant to the creditor’s request, the debtors mailed the four stock
certificates representing the 80,000 shares of stock in which the creditor had
a security interest to creditor’s attorney.  Id.  The creditor never
endorsed these certificates.  Id.  Before judicial foreclosure and after
giving notice to debtors, the creditor voted the shares of stock.  Id.
at 383.

        At
trial, the debtors in Cohen argued that the security agreement did not
allow the creditor to vote the shares of stock before foreclosure.  Id. 
They argued that, when the creditor notified them that he had voted the shares
of stock, he accepted the stock in full satisfaction of the obligation and was
precluded from suing for any deficiency.  Id.  The jury found that he
had exercised ownership rights in the collateral, and the trial court held that
this amounted to an acceptance of the collateral in full satisfaction of the
debt.  Id. at 381. 

            The
court of appeals in Cohen noted that the concept of “involuntary strict
foreclosure” had never specifically been addressed in Texas.  Id. at
386.  It observed that one approach taken by some states had been to hold that
it was impossible to retain collateral in satisfaction of an obligation without
actual service of notice on the debtor of the secured party’s intent to retain
the collateral in payment of the debt.  Id.  A second approach was to
imply retention in satisfaction of the obligation from an unreasonably
prolonged retention of the collateral by the secured party, which was a
question of fact.  Id.  A third approach looked to whether the secured
party’s actions manifested an intent to retain the collateral in satisfaction
of the obligation.  Id.

            After
examining Tanenbaum, the Cohen court determined that Texas did
not follow the first approach, which required that the debtor be notified of
retention of collateral in satisfaction of an obligation.  Id.  However,
Tanenbaum left undecided which of the remaining two approaches was the
law in Texas.  Id. at 388.  The court was of the opinion that the right
to vote stock is one incident of ownership but that the exercise of ownership
rights was not synonymous with retention.  Id.  Thus, it was improper to
submit the question to the jury:  “Did Plaintiff . . . intend to, and did he,
exercise the same or similar rights of ownership with regard to the 80,000
shares of common stock . . . which a third party would have usually exercised
if the stock had been owned by such a third party, other than Plaintiff or
Defendants?”  Id. at 383-84, 388.  This question did not resemble either
of the two approaches left open by Tanenbaum.  Id. at 388.  The
court reversed and remanded.  Id. at 393.

            The
Current Statute

            The
current statute, Section 9.620, resolves some of the difficulties raised by Tanenbaum
and Cohen.  The former statute, as quoted in Tanenbaum, stated
that a secured party in possession of collateral may propose to retain the
collateral in satisfaction of the obligation.  Tanenbaum, 628 S.W.2d at
771.  Section 9.620 allows a secured party to accept collateral in full or
partial satisfaction only if the procedures set out are complied with. 
These procedures include sending proposals of acceptance to various interested
parties under Section 9.621 and having the creditor either consent to the terms
of the acceptance (which presumably would include some mention of the fact that
the acceptance is in full or partial satisfaction of the obligation) or fail to
reply to a proposal setting out the terms of the acceptance.  Section 9.620.

            The
comments to Section 9.620 reveal that it was meant to do away with the doctrine
of constructive strict foreclosure, as represented by Tanenbaum, by
requiring the secured party’s authentication to the terms of acceptance. 
“[D]elay is a factor relating to whether the secured party acted in a
commercially reasonable manner for purposes of Section 9-607 or 9-610.” 
Section 9.620 cmt. 5.

            Here,
there was no indication in the stipulation or the agreed order that one of the
terms of the conveyance was that CNB was accepting the collateral in full or
partial satisfaction of the obligation.  In general, a release of a claim must
state the claim to be released.  Brady, 811 S.W.2d 931.  There
was no mention in the stipulation or the agreed order that CNB was releasing
its claims against Trans-Gulf or Smith; therefore, CNB’s claim as to the
indebtedness was not released.

            Although
neither the parties nor this court found a Texas case directly in point, we
agree with CNB that Royal Palm, 2009 WL 1941862, involved a
similar set of facts and is authority in support of our conclusion that the
stipulation and agreed order did not constitute an acceptance of the collateral
by CNB that was in full or partial satisfaction of Trans-Gulf’s or Smith’s
obligations.  Although Smith attempts to distinguish Royal Palm by
arguing that only possession of the collateral was transferred to the creditor,
Carbon Capital, it is clear from the opinion that the debtor assigned all its
rights in the collateral to Carbon Capital just as Trans-Gulf did in this case.

            After
the debtor, Royal Palm Senior Investors, LLC (RPSI), first defaulted, Carbon
Capital demanded full payment from the guarantor.  The parties entered into a
settlement agreement that gave RPSI an extension on the debt repayment date and
provided that, if RPSI failed to pay the outstanding debt, sell the hotel, or
refinance the loan by the new date, the collateral (Membership Interests) would
be automatically conveyed to Carbon Capital.  When RPSI failed to perform,
Carbon Capital requested and RPSI tendered an assignment and transfer of all the
Membership Interests, after which Carbon Capital “became owner and managing
member of the Hotel.”  In the present case, Smith fails to acknowledge that
“possession” may be transferred with or without title passing.

            The Royal
Palm court pointed out that, once a creditor takes possession of the
collateral, the creditor has three options after default: (1) the secured party
may sue on the note itself (N.Y. U.C.C. Section 9-601(a)(1)); (2) the secured
party “may accept collateral in full or partial satisfaction of the
obligation it secures” pursuant to N.Y. U.C.C. Section 9-620(a); or (3) the
secured creditor “may sell, lease, license, or otherwise dispose of any or all
of the collateral” by a “commercially reasonable” public or private proceeding (N.Y.
U.C.C. Section 9-610(a)).  2009 WL 1941862, at *3-4.  In finding that Carbon
Capital had declined the second remedy (as in this case), the court stated:

In fact, courts have
declined to apply this remedy when the secured creditor, wishing [Section
9-620] not to apply, did not fulfill its procedural prerequisites.   Since it
is undisputed that the Settlement Agreement did not set forth any terms by
which Carbon Capital would accept the collateral in satisfaction of the debt
and Carbon Capital did not send written notice of any intention to do so, the
Court declines to apply this remedy.

 

Royal Palm,
2009 WL 1941862, at *3 (citations omitted).  The court in Royal Palm quoted
comment 5:  A “secured party’s acceptance of possession of the collateral does
not, of itself, necessarily raise an implication that the secured party intends
or is proposing to accept the collateral in satisfaction of the secured
obligation.”  Id.  In the case before this court, there is no evidence
that CNB wanted Section 9.620 to apply.

            CNB’s
actions indicate that it chose the third option:  a secured creditor “may sell,
lease, license, or otherwise dispose of any or all of the collateral” by a
“commercially reasonable” public or private proceeding.  Section 9.610(a).  Smith
made no claim that the disposal of the collateral by CNB was not commercially
reasonable.  Therefore, it is too late for Smith to challenge the insurance
settlement or the amount that CNB received for the impaired rig and equipment. 

            We
hold that CNB did not accept the collateral in full or partial satisfaction of
Trans-Gulf’s indebtedness.  Smith’s first issue is overruled.

Accord
and Satisfaction

            We
noted earlier that Smith in paragraph 7 of his guaranty waived the affirmative
defense of accord and satisfaction.  There is an additional reason why Smith
has not proved an accord and satisfaction.

            To
prevail under common law on the affirmative defense of accord and satisfaction,
there must be (1) evidence of a dispute between Trans-Gulf (or Smith) and CNB
and (2) evidence establishing that it and CNB specifically and intentionally
agreed to discharge Smith’s obligations.  Milton M. Cooke Co. v. First Bank &
Trust, 290 S.W.3d 297, 304 (Tex. App.—Houston [1st Dist.] 2009, no
pet.).

            In Jenkins
v. Henry C. Beck Co., 449 S.W.2d 454, 455 (Tex. 1969), the supreme
court held that the defense of accord and satisfaction rests on a new contract,
express or implied, in which the parties agree to the discharge of the existing
obligation by means of a lesser payment tendered and accepted.  But the supreme
court made it clear that there must be an unmistakable communication to the creditor
that the tender is made on the condition that acceptance will constitute
satisfaction of the underlying obligation, and the statement accompanying the
tender must be so clear, full, and explicit that it is not susceptible of any
other interpretation.  Id. at 455.

            As with Smith’s argument that
CNB accepted the collateral in full or partial satisfaction of the obligation,
his argument on accord and satisfaction fails because there is no evidence that
Trans-Gulf and CNB specifically and intentionally agreed to discharge
Trans-Gulf’s obligation.  Smith’s third issue is overruled.

Summary

            It
did not matter whether title passed, or only possession, of the collateral
under the stipulation and agreed order.  What mattered is that the stipulation
and agreed order did not clearly state that CNB accepted the collateral in full
or partial satisfaction of Trans-Gulf’s debt.  Nor was there any indication
that Trans-Gulf, the debtor, agreed to the acceptance being in full or partial
satisfaction.  The requirements of Section 9.620 were not followed.  

            Smith
in his guaranty waived the affirmative defense of accord and satisfaction. 
Moreover, the stipulation and agreed order contained no “unmistakable
communication” to CNB that the tender of the collateral was made “upon the
condition that acceptance [would] constitute satisfaction of the underlying
obligation.”  See Jenkins, 449 S.W.2d at 455.

            Although
the stipulation and agreed order did not follow the requirements of Section 9.620
for a full or partial satisfaction of Trans-Gulf’s debt, CNB has stated that it
did sell the rig and equipment and that it did receive proceeds from a
settlement of the insurance claim.  Under paragraph 7 of his guaranty, Smith
agreed to remain liable for any deficiency remaining after foreclosure of the
security interest securing Trans-Gulf’s indebtedness.  Section 9.615 is also
authority for Smith being liable for any deficiency after CNB’s disposition of
the collateral.  The summary judgment evidence raised an issue of material fact
regarding the amount of credit due to Smith.  On remand, to determine the
credit due Smith, the trial court need only determine the amount received by
CNB in the insurance settlement, the amount from the sale of the rig and
equipment, and the amount of CNB’s related expenses in dealing with the
collateral.

This
Court’s Ruling

            The trial court’s judgment is
affirmed in part and reversed in part.  That portion of the judgment awarding damages
to Community National Bank is reversed, and the cause is remanded to the trial
court for a recalculation of damages, giving C. Kyle Smith credit due to him
consistent with this opinion.  In all other respects, the judgment of the trial
court is affirmed.

                                                

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

June 16, 2011

Panel[2]
consists of:  Wright, C.J.,

McCall, J., and Hill, J.[3]









[1]The Texas Uniform Commercial Code is found in the Texas
Business and Commerce Code.  We will refer to it as the Texas UCC or the UCC.





[2]Rick Strange, Justice, resigned effective April 17,
2011.  The justice position is vacant pending appointment of a successor by the
governor.

 





[3]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.